[No. D057024. Fourth Dist., Div. One. Apr. 27, 2011.]

SHANE ALAN CAHILL, Plaintiff and Respondent, v.
SAN DIEGO GAS & ELECTRIC COMPANY, Defendant,
Cross-complainant and Appellant;
MAURICE MAIO et al., Cross-defendants and Respondents.

942

COUNSEL

William A. Calders and Richard H. Benes for Defendant, Cross-complainant and Appellant.

Palomar Advocates, Macaluso & Associates and Scott White for Plaintiff and Respondent.

Bremer, Whyte, Brown & O'Meara, Keith G. Bremer, Rick L. Peterson; and Everett L. Skillman for Cross-defendants and Respondents.

OPINION

McDONALD, J.—Defendant and cross-complainant San Diego Gas & Electric Company (SDGE) appeals an order dismissing its cross-complaint for equitable indemnity against cross-defendants Maurice Maio, David Zeiger, and Nantasket Court Condominium Association (collectively Owners) after the trial court found that Owners' $25,000 settlement with plaintiff Shane Alan Cahill was made in good faith within the meaning of Code of Civil Procedure section 877.6.[1] On appeal, SDGE contends the trial court abused its discretion by granting Owners' section 877.6 motion and dismissing its cross-complaint because, applying the relevant factors set forth in *Tech-Bilt,*

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

*Inc. v. Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 [213 Cal.Rptr. 256, 698 P.2d 159] *(Tech-Bilt)*, no rational trial court could conclude the settlement was made in good faith and insufficient evidence supports the trial court's findings. SDGE also asserts the trial court erred by denying its separate motion for summary judgment against Cahill.

## FACTUAL AND PROCEDURAL BACKGROUND

Maio owns 3566 Bayside Walk and Zeiger owns 3568 Bayside Walk, residences that constitute a two-unit Mission Beach condominium project (Property) built in 1984. Nantasket Court Condominium Association (Association) is the homeowners association that manages Property. Apparently after 1984, Owners installed glass railings around the perimeter of Property's roof and also installed several air-conditioning units on the roof. In 1999, Zeiger installed a Jacuzzi whirlpool tub with a surrounding deck on the northwest corner of the roof. In 2005, SDGE apparently replaced an existing utility pole with a new pole in the alley directly adjacent to Property.

On September 3, 2008, Cahill, an employee of Lily's Window Cleaning (Employer), suffered severe burns and other injuries when his metal window-washing pole made contact with the SDGE 12,000-volt electrical line located in the alley, higher than and adjacent to Property's roof. At the time of the incident, Cahill was preparing to wash the glass railing on the southwest corner of the roof, while standing with one foot on a metal air-conditioning unit and the other foot on the bottom of the glass railing.

On November 13, 2008, Cahill filed a personal injury action against SDGE, alleging it was negligent per se for constructing and maintaining electrical lines too close to Property in violation of state law (i.e., Cal.P.U.C. Gen. Order No. 95).[2] In December, SDGE filed an answer denying Cahill's allegations and asserting various affirmative defenses.

In April 2009, Cahill and Owners entered into a settlement agreement pursuant to which Owners paid Cahill $25,000 in exchange for the release of all claims he may have had against them arising out of his September 3, 2008, injury. In May, SDGE filed a cross-complaint against Owners for apportionment of fault and equitable indemnification, alleging Owners should be held legally responsible for their comparative negligence in causing Cahill's injuries. Owners subsequently filed a cross-complaint against SDGE for indemnity and other relief.

In July, Delos Insurance Company filed a complaint in intervention against SDGE for recovery of workers' compensation benefits it paid to Cahill as a

---

[2] We hereafter refer to that order as General Order No. 95.

result of SDGE's alleged negligence. In August, SDGE filed a motion for summary judgment against Cahill. The trial court issued an order denying that motion. We summarily denied SDGE's writ petition challenging that order. (*San Diego Gas & Electric Co. v. Superior Court* (Feb. 23, 2010, D056719).)

In November, Owners filed a motion for a section 877.6 determination that their settlement with Cahill was made in good faith, and for an order dismissing with prejudice SDGE's cross-complaint against them for equitable indemnity or other relief. SDGE opposed the motion. On January 22, 2010, the trial court heard arguments of counsel and then issued a minute order confirming its tentative ruling granting Owners' motion. On January 29, the court issued a written order granting Owners' motion, determining the settlement was made in good faith within the meaning of section 877.6, and dismissing with prejudice all claims against Owners for equitable indemnity or other relief arising out of the incident (e.g., SDGE's cross-complaint against Owners). On March 15, the trial court issued an order dismissing Owners' cross-complaint against SDGE. On March 19, we summarily denied SDGE's writ petition challenging the trial court's order granting Owners' section 877.6 motion. (*San Diego Gas & Electric Co. v. Superior Court* (Mar. 19, 2010, D056875).)

SDGE timely filed a notice of appeal, challenging the trial court's order granting Owners' section 877.6 motion and dismissing its cross-complaint against them.[3] Owners filed a motion to dismiss SDGE's appeal. Cahill filed a "motion to dismiss" SDGE's request that, in conjunction with its appeal of the section 877.6 order, we review the trial court's order denying its motion for summary judgment against him.

## DISCUSSION

## I

### *Cahill's "Motion to Dismiss"*

On June 14, 2010, SDGE filed its opening appellant's brief, asserting the trial court erred by denying its motion for summary judgment against Cahill and that the order was reviewable pursuant to section 906 in conjunction with its appeal of the court's order granting Owners' section 877.6 motion. On

---

[3] Because all claims filed by or against Owners have been dismissed, we deem the court's order to be a "final" judgment within the meaning of section 904.1, subdivision (a)(1). (*Justus v. Atchison* (1977) 19 Cal.3d 564, 568 [139 Cal.Rptr. 97, 565 P.2d 122], disapproved on another ground in *Ochoa v. Superior Court* (1985) 39 Cal.3d 159, 171 [216 Cal.Rptr. 661, 703 P.2d 1].)

July 27, 2010, Cahill filed a "motion to dismiss" SDGE's appeal of the trial court's order denying its motion for summary judgment against him. He asserts (1) the order denying SDGE's motion for summary judgment is not appealable until a final judgment is entered and (2) section 906 does not allow review of that order in conjunction with SDGE's appeal of the order granting Owners' section 877.6 motion. SDGE filed an opposition, conceding the order denying its motion for summary judgment against Cahill is not appealable, but arguing section 906 applies and requires us to *review* that order in conjunction with its appeal of the order granting Owners' section 877.6 motion and dismissing its cross-complaint against Owners. On August 16, 2010, Cahill then filed a request for leave to file a reply in support of his motion to dismiss. We hereby grant the request for leave, deem the reply to have been filed, and consider its substance.

We agree with the parties that the trial court's order denying SDGE's motion for summary judgment against Cahill is not appealable. (*Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 343 [84 Cal.Rptr.3d 38] ["An order denying a motion for summary judgment or summary adjudication is not an appealable order."].) Nevertheless, as SDGE notes, if a decision (e.g., final judgment) is properly appealed pursuant to section 904.1 or 904.2, section 906 allows us to "review" certain "intermediate" orders or other rulings not otherwise directly appealable. Section 906 provides in pertinent part: "Upon an appeal pursuant to Section 904.1 or 904.2, the reviewing court *may review the* verdict or *decision and any intermediate* ruling, proceeding, *order or decision* which involves the merits *or* necessarily affects the judgment or order appealed from *or* which substantially affects the rights of a party . . . ." (Italics added.) SDGE argues that because it properly appealed the trial court's order dismissing its cross-complaint for equitable indemnity against Owners, section 906 requires us to review the court's intermediate order denying its motion for summary judgment against Cahill (even though that motion did not directly affect Owners). Although we agree (as we discuss below) SDGE may properly appeal the trial court's order dismissing its cross-complaint against Owners, we disagree with SDGE's assertion that section 906 applies in the circumstances of this case to allow (or require) us to review the trial court's nonappealable order denying SDGE's motion for summary judgment against Cahill.

We conclude none of section 906's three alternative prerequisites to allowing review of a nonappealable, intermediate order apply in this case. First, the order denying SDGE's motion for summary judgment against Cahill does *not* "involve[] the merits" of the order appealed from (i.e., the order dismissing SDGE's cross-complaint for equitable indemnity against Owners). (§ 906.) The order appealed involves the question whether the trial court erred in determining whether Owners' settlement with Cahill was made in good faith. The order denying SDGE's motion for summary judgment against

Cahill does *not* involve the merits of that appealed order, but instead involves the question whether there are any triable issues of material fact precluding summary judgment on Cahill's personal injury claims against SDGE.[4] SDGE does not cite any case showing, or otherwise persuade us, that this prerequisite is satisfied in the circumstances of this appeal.

Second, the order denying SDGE's motion for summary judgment against Cahill does *not* "necessarily affect[]" the order appealed from (i.e., the order dismissing SDGE's cross-complaint for equitable indemnity against Owners). (§ 906.) SDGE argues: "[I]f [SDGE] were entitled to summary judgment, as it contends [citation], it would have no liability to Cahill and no right to seek equitable indemnity from the building owners. [Citations.] Therefore, the correctness of the good faith settlement order would be affected—rendered moot—by the summary judgment to which [SDGE] is entitled." However, in so arguing, SDGE misconstrues and/or misapplies section 906 by essentially arguing the order denying its motion for summary judgment against Cahill *could* affect its claim for equitable indemnity against Owners and, as a result, the order dismissing its cross-complaint against Owners (i.e., by rendering that claim moot *if* its motion for summary judgment against Cahill should have been granted). The second alternative section 906 prerequisite for review of a nonappealable order in this case is *not* whether the order denying SDGE's motion for summary judgment *could* affect the order dismissing its cross-complaint against Owners, but rather whether it *necessarily* affects the order dismissing its cross-complaint against Owners. (§ 906.) Contrary to SDGE's assertion, we conclude the trial court's order denying SDGE's motion for summary judgment against Cahill does *not* "necessarily" affect the order dismissing SDGE's cross-complaint for equitable indemnity against Owners. (§ 906.) If the trial court correctly denied SDGE's motion for summary judgment against Cahill, that decision would not necessarily affect its order dismissing SDGE's cross-complaint for equitable indemnity against Owners. SDGE does not cite any case showing, or otherwise persuade us, that this prerequisite is satisfied in the circumstances of this appeal.

Finally, SDGE does not present any substantive argument showing the third alternative prerequisite under section 906 is satisfied in the circumstances of this case. Rather, it apparently presumes it is *Cahill's* burden to show that prerequisite is not satisfied and, by not substantively addressing it in his motion to dismiss, he has not met his burden "to establish that the order is not reviewable on appeal under that third, alternative criterion."

---

[4] SDGE apparently confuses which order's merits must be involved, inaptly arguing: "An order denying a motion for summary judgment . . . goes to the heart of the case—whether a trial of the merits is even required." However, it is not the merits of the order denying the motion for summary judgment that must be involved, but rather the merits of the "order appealed from," which in this case is the order dismissing SDGE's cross-complaint for equitable indemnity against Owners. (§ 906.)

Assuming arguendo SDGE is correct that Cahill has the burden to show the prerequisite is not satisfied, Cahill's purported failure to meet that burden cannot bestow jurisdiction on us to review an order not reviewable on appeal under section 906 or otherwise. Accordingly, absent substantive discussion by either party, we independently address whether that prerequisite is satisfied in this case.

■ Pursuant to section 906, a nonappealable intermediate order that "substantially affects the rights of a party" may be reviewed in conjunction with an appeal of a final judgment or appealable order. The clear import of that provision is to allow an appellate court to review rulings, orders, or other decisions that led up to, or directly related to, the judgment or order being appealed to the extent they substantially affected the rights of one of the parties to the appeal. It is implicit within section 906's language that the "intermediate" order or decision that substantially affects the rights of a party must be one that led up to, or directly relates to, the judgment or order being appealed.

Therefore, nonappealable orders or other decisions substantively and/or procedurally collateral to, and not directly related to, the judgment or order being appealed are not reviewable pursuant to section 906 even though they literally may "substantially affect[]" one of the parties to the appeal. If section 906 were interpreted without that implicit limitation, either party to an appeal could obtain review of various nonappealable, intermediate, and collateral rulings, orders, or other decisions made by the trial court that, in the case of multiple-party actions (such as this one), may have no direct relevance to the other party to the appeal or to the issues on appeal. That interpretation could allow one party to the direct appeal to, in colloquial terms, "open the floodgates" and bring into the appeal all sorts of collateral or other unrelated intermediate decisions that do not affect the other party to the appeal or the appealed decision, thereby potentially increasing exponentially the issues to be addressed on appeal and the use of limited judicial resources to decide those issues.

We do not believe the Legislature intended section 906 to allow review of various nonappealable intermediate and collateral rulings, orders, or other decisions that do not directly relate to the judgment or order being appealed, affect only one of the parties to the appeal, and could, as a result, add as cross-respondents to the appeal parties not involved in, or affected by, the judgment or order being directly appealed. SDGE has not cited, nor have we found, any apposite case construing section 906 in such an expansive

manner.[5] Accordingly, we conclude the order denying SDGE's motion for summary judgment against Cahill does *not* "substantially affect[] the rights of a party" within the meaning of section 906.

Because the trial court's order denying SDGE's motion for summary judgment against Cahill is not appealable or otherwise reviewable pursuant to section 906, we grant Cahill's motion and decline to review that order in conjunction with its appeal of the order dismissing its cross-complaint for equitable indemnification against Owners.[6] Accordingly, to the extent SDGE's appellate briefs challenge and substantively discuss the order denying SDGE's motion for summary judgment against Cahill, we disregard those portions of its briefs and decline to substantively review and address the merits of its challenge to the order denying that motion for summary judgment.[7]

II

*Owners' Motion to Dismiss*

On July 2, 2010, Owners filed a motion to dismiss SDGE's appeal, asserting it has no right to appeal the trial court's order that determined their settlement with Cahill was made in good faith within the meaning of section 877.6 and dismissed its cross-complaint for equitable indemnity against them. Owners assert a writ petition pursuant to section 877.6, subdivision (e), provides the exclusive means to challenge that order.

A

As a preliminary matter, we address motions for judicial notice filed by the parties. On July 20, 2010, SDGE filed a motion for judicial notice regarding Association's corporate status. SDGE requests that we take judicial notice of a document dated July 16, 2010, issued by the State of California's Secretary of State (Secretary of State), certifying that Association's powers, rights and

---

[5] *Bell v. Farmers Ins. Exchange* (2001) 87 Cal.App.4th 805 [105 Cal.Rptr.2d 59] and the other cases cited by SDGE are inapposite and do not persuade us to conclude otherwise.

[6] Although Cahill uses the misnomer "motion to dismiss" in challenging SDGE's attempt to obtain review of the order denying its motion for summary judgment in conjunction with this appeal, we deem his motion to be, in effect, a motion to strike and/or disregard SDGE's briefs to the extent they challenge or substantively discuss that order.

[7] Because we grant Cahill's motion and disregard SDGE's challenge to the order denying its motion for summary judgment, we deny as moot Cahill's September 20, 2010, motion for judicial notice of certain documents relating to his substantive discussion of the merits of SDGE's challenge to that order. Likewise, we deny as moot Cahill's November 23, 2010, request for leave to file a reply in support of his motion for judicial notice.

privileges were suspended by that office on October 18, 2007, and by the State of California's Franchise Tax Board (FTB) on July 1, 2008, and that Association's powers, rights and privileges remain suspended. SDGE also requests that we take judicial notice of "the fact that the corporate powers, rights and privileges of [Association] have been suspended since October 18, 2007, and remain suspended." Owners did not oppose SDGE's motion for judicial notice.

On August 31, 2010, Owners filed a motion for judicial notice regarding Association's corporate status. They request that we take judicial notice of a certificate of revivor issued by FTB on August 16, stating that, as of July 27, 2010, Association "has been relieved of suspension or forfeiture and is now in good standing with [FTB]." SDGE did not oppose Owners' motion for judicial notice. On September 16, we issued an order granting Owners' unopposed motion for judicial notice.

On January 5, 2011, we requested supplemental briefing by the parties on the issue of whether our September 16, 2010, order made moot SDGE's arguments regarding Association's corporate status and its effect on this appeal. We have received and considered the parties' supplemental briefs. Furthermore, on February 1, 2011, Owners filed a motion for judicial notice regarding a certificate of status issued on January 27, 2011, by the Secretary of State, certifying that Association is active, in good standing, and authorized to exercise all of its powers, rights and privileges.

Pursuant to Evidence Code sections 452, subdivision (b), and 459, subdivision (a), we hereby grant, in part, SDGE's July 20, 2010, motion for judicial notice and take judicial notice of the certificate issued on July 16, 2010, by the Secretary of State. However, we deny SDGE's motion to the extent it requests that we take judicial notice of "the fact that the corporate powers, rights and privileges of [Association] have been suspended since October 18, 2007, and remain suspended." Furthermore, we hereby grant Owners' February 1, 2011, motion for judicial notice and take judicial notice of the certificate issued on January 27, 2011, by the Secretary of State. (Evid. Code, §§ 452, subd. (b), 459, subd. (a); *El Escorial Owners' Assn. v. DLC Plastering, Inc.* (2007) 154 Cal.App.4th 1337, 1367 [65 Cal.Rptr.3d 524].)

In opposition to Owners' motion to dismiss, SDGE argues Association had no right to file a motion to dismiss (or a respondent's brief) because of the suspension of its corporate status as shown by the Secretary of State's certificate issued on July 16, 2010. However, because subsequent thereto FTB issued a certificate of revivor and the Secretary of State issued a certificate stating Association is now active and in good standing, Association's current good standing as a corporation operates retroactively and it is deemed to have

been active and in good standing at all times during this action and appeal. (*Center for Self-Improvement & Community Development v. Lennar Corp.* (2009) 173 Cal.App.4th 1543, 1553 [94 Cal.Rptr.3d 74]; *Peacock Hill Assn. v. Peacock Lagoon Constr. Co.* (1972) 8 Cal.3d 369, 373–374 [105 Cal.Rptr. 29, 503 P.2d 285].) Accordingly, Association is deemed to have had the corporate capacity to properly file the motion to dismiss (along with corespondents Maio and Zeiger).

## B

Addressing the merits of Owners' motion to dismiss, there is an apparent split of authority regarding whether a writ petition filed pursuant to section 877.6, subdivision (e), is the sole means of challenging a trial court's order that determines a settlement by one or more defendants was made in good faith and dismisses a cross-complaint filed by a nonsettling defendant. Section 877.6, subdivision (e) (hereafter section 877.6(e)), provides: "When a determination of the good faith or lack of good faith of a settlement is made, any party aggrieved by the determination *may* petition the proper court to review the determination by writ of mandate. The petition for writ of mandate shall be filed within 20 days after service of written notice of the determination, or within any additional time not exceeding 20 days as the trial court may allow." (Italics added.) Section 877.6 does *not* expressly provide that a section 877.6(e) writ petition is the exclusive means of obtaining appellate review of an order determining a settlement was made in good faith. However, considering section 877.6's language, legislative history, and policy favoring finality to litigation for settling tortfeasors, one court concluded that a timely writ petition under section 877.6(e) provided the exclusive means for a nonsettling defendant to challenge the merits of a determination that the settlement by another defendant was made in good faith. (*Main Fiber Products, Inc. v. Morgan & Franz Ins. Agency* (1999) 73 Cal.App.4th 1130, 1135–1136 [87 Cal.Rptr.2d 108] (*Main Fiber*).)

In *Main Fiber*, the nonsettling defendant did not file a writ petition challenging the trial court's determination that another defendant's settlement with the plaintiffs was made in good faith within the meaning of section 877.6, but first challenged that determination in its cross-appeal after a final judgment was entered in its favor. (*Main Fiber, supra,* 73 Cal.App.4th at pp. 1132–1134.) *Main Fiber* concluded section 877.6(e) "precludes, not only a direct appeal from the interlocutory good faith determination, but also any review of that ruling upon an appeal from the final judgment." (*Main Fiber*, at p. 1135.) *Main Fiber* concluded: "Any party wishing to challenge the merits of a 'good faith settlement' determination must do so via a petition for writ of mandate in the manner and within the time prescribed by section 877.6[(e)]. [Citations.] In particular, an aggrieved party may not forgo writ review and

seek instead to have the determination reviewed for the first time in an appeal from the final judgment arising out of the trial of the plaintiff's claims against the nonsettling defendants." (*Id.* at pp. 1136–1137, fn. omitted.) However, the court noted: "One authority has opined that 'if the writ petition is denied, review of a section 877.6 determination should lie by appeal from the ultimate judgment.' [Citation.] Because [the nonsettling defendant] never petitioned for a writ at all, we need not consider that possible exception to the rule just announced." (*Id.* at p. 1137, fn. 4.)

In *O'Hearn v. Hillcrest Gym & Fitness Center, Inc.* (2004) 115 Cal.App.4th 491 [9 Cal.Rptr.3d 342], the court agreed with *Main Fiber*'s reasoning and holding. (*O'Hearn*, at pp. 498–499.) *O'Hearn* concluded: "[A] party wishing to challenge the merits of a good faith settlement determination must do so by way of a petition for writ of mandate in accordance with section 877.6[(e)], and may not seek to have the determination reviewed for the first time on the appeal from the final judgment following the trial of the plaintiff's claims against the nonsettling defendants. [Citation.] Here, [the nonsettling defendant] did not seek writ review of the good faith settlement determination and that ruling is not reviewable at this juncture." (*Id.* at p. 499, fns. omitted.) However, the court noted: "There is a possible exception to the rule denying appellate review of a good faith settlement determination (see *Main Fiber, supra,* 73 Cal.App.4th at p. 1137, fn. 4), but in any event, it has no application here. *Wilshire Ins. Co. v. Tuff Boy Holding, Inc.* [(2001) 86 Cal.App.4th 627, 634–637 [103 Cal.Rptr.2d 480]], allowed appellate review of the trial court's good faith settlement determination because the appellant filed a timely petition for writ review and the petition was summarily denied. In the instant case, [the nonsettling defendant] did not seek writ review in the first instance." (115 Cal.App.4th at p. 499, fn. 8.)

However, other courts have disagreed with *Main Fiber*'s reasoning and concluded a writ petition filed under section 877.6(e) is *not* the exclusive means of challenging a good faith settlement determination. In *Maryland Casualty Co. v. Andreini & Co.* (2000) 81 Cal.App.4th 1413 [97 Cal.Rptr.2d 752] (*Maryland Casualty*), the nonsettling defendant filed a writ petition challenging a good faith settlement determination, but that petition was summarily denied. (*Id.* at pp. 1416, 1418.) After the nonsettling defendant's cross-claims for indemnity against the settling defendant were dismissed and a final judgment was entered, the nonsettling defendant filed an appeal challenging the good faith settlement determination and the dismissal of its cross-claims. (*Id.* at pp. 1415–1419.) The settling defendant filed a motion to dismiss the appeal, arguing that a postjudgment appeal to a good faith settlement determination is barred by section 877.6(e) and that determination may be reviewed only pursuant to a petition for writ of mandate. (*Maryland Casualty,* at pp. 1416, 1420.) *Maryland Casualty* began its analysis by quoting section 877.6(e) and noting it "does not bar postjudgment review on

its face." (*Maryland Casualty*, at p. 1420.) It also noted that section 877.6(e) uses the words " '*may* petition,' " suggesting a writ petition might not be the exclusive means of obtaining review of a good faith settlement determination. (*Maryland Casualty*, at p. 1420.) It noted the word "may" is ordinarily construed as permissive. (*Ibid.*) In construing section 877.6(e), *Maryland Casualty* reviewed its legislative history from its origin in great detail—more so than *Main Fiber* did. (*Maryland Casualty*, at pp. 1420–1424.) *Maryland Casualty* noted that although the State Bar of California Conference of Delegates resolution (which provided the model for § 877.6(e)) included a provision that a good faith settlement determination " '*shall not be appealable*,' " that express prohibition was omitted by the sponsor of the Assembly's original bill (Assemblyman Larry Stirling).[8] (*Maryland Casualty, supra*, 81 Cal.App.4th at pp. 1421–1422.) Furthermore, the Senate Judiciary Committee's analysis of the original Assembly bill stated that although writ of mandate procedures appeared *preferable* to a direct appeal, there would be " '[n]o impact on ability to appeal[.] [¶] A non-settling defendant is presently free to appeal a determination which dismissed a co-defendant pursuant to a settlement after judgment is entered, and this bill would not affect that right of appeal.' " (*Id.* at p. 1422.) After discussing subsequent legislative actions that ultimately resulted in enactment of section 877.6(e) in 1984 in substantially its current form, *Maryland Casualty* stated:

"Based on the foregoing legislative history and the language of section 877.6(e), we conclude that, while the Legislature viewed a writ petition *before* trial as a *preferable* means of reviewing good faith settlement determinations, section 877.6(e) does not foreclose postjudgment review. Although the State Bar Conference of Delegates recommended a nonappealability provision, the Legislature never entertained the idea. The author of the bill expressly opposed the nonappealability language, and the analysis of Assembly Bill No. 3712 in the Senate Judiciary Committee made clear that the statute would not preclude postjudgment review.

"Thus, with knowledge that postjudgment appeals were already allowed by law, the Legislature enacted a statute so that 'any party aggrieved by the [good faith] determination *may* petition the proper court . . . [for a] writ of mandate.' (§ 877.6(e), italics added.) We fail to see how such permissive language could shut the door on postjudgment appeals." (*Maryland Casualty, supra*, 81 Cal.App.4th at pp. 1423–1424, fn. omitted.)

*Maryland Casualty* then noted it was significant that two years after the effective date of section 877.6(e), *Greshko v. County of Los Angeles* (1987)

---

[8] *Maryland Casualty* noted: "Handwritten parentheses were placed around the proposed nonappealability provision, as were the handwritten notations, 'strike according to author' and 'don't want to preclude.' " (*Maryland Casualty, supra*, 81 Cal.App.4th at p. 1422.)

194 Cal.App.3d 822 827, footnote 1 [239 Cal.Rptr. 846], concluded that a good faith settlement determination *could* be challenged on appeal despite the filing of an earlier writ petition challenging that determination, which petition was summarily denied. (*Maryland Casualty, supra*, 81 Cal.App.4th at p. 1424.)

*Maryland Casualty* acknowledged *Main Fiber*'s holding that a nonsettling defendant may not forego writ review and instead seek review for the first time in an appeal from the final judgment after trial, implicitly distinguishing that case based on its inapposite facts involving the nonsettling defendant's failure to first file a writ petition challenging the good faith settlement determination. (*Maryland Casualty, supra*, 81 Cal.App.4th at p. 1424.) *Maryland Casualty* noted: "In *Main Fiber*, the court expressly declined to address the question before us, i.e., whether a nonsettling party, having previously sought but failed to obtain a writ, can challenge a determination of good faith on a postjudgment appeal." (*Id.* at p. 1425, fn. 13.)

*Maryland Casualty* stated: "Our conclusion that a good faith settlement determination can be reviewed by prejudgment writ and postjudgment appeal does not offend any principle of appellate jurisprudence. Before judgment, a writ of mandate (Code Civ. Proc., § 1085) is available to review a variety of trial court rulings, orders, and decisions. [Citations.] By the same token, on a postjudgment appeal, 'the reviewing court may review . . . any *intermediate* ruling, . . . order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party . . . .' (Code Civ. Proc., § 906, italics added.)" (*Maryland Casualty, supra*, 81 Cal.App.4th at p. 1425.) The court also compared the analogous statutory schemes for review of good faith settlement determinations (§ 877.6) and orders on motions for summary adjudication (§ 437c, subd. (f)). (*Maryland Casualty*, at p. 1425.) The court noted that both schemes provide for writ review of their respective decisions and are silent regarding postjudgment review. (*Ibid.*) *Maryland Casualty* then noted: "Yet, our Supreme Court has recognized that summary adjudication orders can be challenged on a postjudgment appeal." (*Ibid.*) The court also noted many other types of orders (i.e., orders denying motions to dismiss for lack of prosecution and orders relating to amendment of pleadings, discovery, and the right to trial by jury) could be challenged either by a writ petition *or* on appeal after a final judgment. (*Id.* at pp. 1425–1426.) *Maryland Casualty* concluded: "In sum, [the nonsettling defendant] promptly petitioned this court for a writ of mandate—a discretionary remedy—when the trial court ruled that the . . . settlement was made in good faith. The petition was summarily denied. [The nonsettling defendant] may now seek review of the good faith determination on appeal as a matter of right." (*Id.* at p. 1426.) Accordingly, the court denied the settling defendant's motion to dismiss the nonsettling defendant's appeal. (*Ibid.*)

In *Wilshire Ins. Co. v. Tuff Boy Holding, Inc., supra*, 86 Cal.App.4th 627 (*Wilshire*), the court rejected the settling defendant's motion to dismiss the nonsettling defendant's appeal, concluding the good faith settlement determination was subject to postjudgment review on appeal because the nonsettling defendant had earlier filed a writ petition challenging that determination, which petition was summarily denied. (*Id.* at pp. 630, 634–637.) *Wilshire* discussed *Main Fiber*'s holding, but distinguished that case because the nonsettling defendant in *Wilshire* timely filed a writ petition, which was summarily denied. (*Id.* at p. 636.) *Wilshire* then noted *Maryland Casualty* had "copiously canvassed and analyzed" the legislative history of section 877.6(e) and stated it "agree[d] with the analysis and conclusion of" *Maryland Casualty*. (*Wilshire*, at p. 636.) In construing section 877.6(e), *Wilshire* also considered statutes that provide for writ review of orders, but expressly prohibit appeal of those orders.[9] (*Wilshire, supra*, 86 Cal.App.4th at pp. 636–637.) *Wilshire* stated: "The foregoing statutes clearly and unequivocally limit review to writ review. Their language stands in stark contrast to section 877.6(e), which provides that a party aggrieved by a good faith settlement [determination] 'may' petition the proper court for a writ of mandate." (*Id.* at p. 637.) Accordingly, *Wilshire* concluded that in the circumstances of its case, "the trial court's good faith settlement determination is subject to appellate review on appeal from the judgment," implicitly denying the settling defendant's motion to dismiss the appeal. (*Ibid.*)

■ In their motion to dismiss the instant appeal, Owners note the apparent split of authority regarding whether a section 877.6(e) writ petition is the sole means of challenging a trial court's order that determines a settlement by one or more defendants was made in good faith and dismisses a cross-complaint filed by a nonsettling defendant. Noting this court has not yet addressed this issue, Owners ask us to follow the holdings in *Main Fiber* and *O'Hearn* and dismiss SDGE's appeal challenging the trial court's good faith settlement determination. However, we decline to do so. Based on our review of section 877.6(e)'s language and legislative history, and *Main Fiber*, *O'Hearn*, *Maryland Casualty*, and *Wilshire*, we conclude a writ petition that "may" be filed pursuant to section 877.6(e) is a *permissive*, not mandatory, means of challenging a good faith settlement determination, and the availability of writ review, or the summary denial of a writ petition, does not preclude

---

[9] For example, *Wilshire* noted section 405.39 (regarding orders expunging a notice of lis pendens) expressly provides: " 'No order or other action of the court under this chapter shall be appealable. Any party aggrieved by an order made on a motion under this chapter may petition the proper reviewing court to review the order by writ of mandate.' " (*Wilshire, supra*, 86 Cal.App.4th at p. 637.) *Wilshire* also discussed similar provisions in section 170.3, subdivision (d) (orders regarding disqualification of a judge), Business and Professions Code section 2337 (orders regarding revocation or suspension of a medical license), and Government Code section 6259 (orders regarding requests to compel production of public records). (*Wilshire*, at p. 637.)

an appeal after a final judgment. *Maryland Casualty*'s detailed analysis of the legislative history of section 877.6(e), as discussed above, persuades us the Legislature did *not* intend that statute to preclude postjudgment appeals of good faith settlement determinations where earlier writ petitions were summarily denied. We are persuaded by, and adopt the reasoning in, *Maryland Casualty* and *Wilshire*. In contrast, we are unpersuaded by the reasoning in *Main Fiber* and *O'Hearn*. In any event, we conclude *Main Fiber* and *O'Hearn* are procedurally inapposite to this case because the nonsettling defendants in those cases appealed without first filing a writ petition pursuant to section 877.6(e). Accordingly, we deny Owners' motion to dismiss SDGE's appeal of the trial court's order that determined their settlement with Cahill was made in good faith and dismissed its cross-complaint against them.

### III

*Standards of Review*

On appeal, a judgment of the trial court is presumed to be correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) Accordingly, if a judgment is correct on any theory, the appellate court will affirm it regardless of the trial court's reasoning. (*Estate of Beard* (1999) 71 Cal.App.4th 753, 776–777 [84 Cal.Rptr.2d 276]; *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 18–19 [112 Cal.Rptr. 786, 520 P.2d 10].) All intendments and presumptions are made to support the judgment on matters as to which the record is silent. (*Denham, supra,* at p. 564.) We presume the trial court followed applicable law. (*Wilson v. Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554, 563 [194 Cal.Rptr. 773, 669 P.2d 9].) When no statement of decision is requested and issued, we imply all findings necessary to support the judgment. (*In re Marriage of Cohn* (1998) 65 Cal.App.4th 923, 928 [76 Cal.Rptr.2d 866].)

■ "Appellate briefs must provide argument and legal authority for the positions taken. 'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.'" (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862 [91 Cal.Rptr.3d 726].) "We are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 [79 Cal.Rptr.3d 588]; see also *Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 366, fn. 2 [87 Cal.Rptr.2d 654, 981 P.2d 499]; *People v. Stanley* (1995) 10 Cal.4th 764, 793 [42 Cal.Rptr.2d 543, 897 P.2d 481].)

When a matter is left to the discretion of the trial court, on appeal we apply the abuse of discretion standard of review. (*Gonzales v. Nork* (1978) 20 Cal.3d 500, 507 [143 Cal.Rptr. 240, 573 P.2d 458].) Under that standard, there is no abuse of discretion requiring reversal if there exists a reasonable or fairly debatable justification under the law for the trial court's decision or, alternatively stated, if that decision falls within the permissible range of options set by the applicable legal criteria. (*Ibid.*; *Ramos v. Countrywide Home Loans, Inc.* (2000) 82 Cal.App.4th 615, 624 [98 Cal.Rptr.2d 388].) Judicial discretion "implies absence of arbitrary determination, capricious disposition or whimsical thinking. It imports the exercise of discriminating judgment within the bounds of reason." (*People v. Surplice* (1962) 203 Cal.App.2d 784, 791 [21 Cal.Rptr. 826].) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712 [76 Cal.Rptr.3d 250, 182 P.3d 579], fns. omitted.) We reverse the judgment only if in the circumstances of the case, viewed most favorably in support of the decision, the decision exceeds "the bounds of reason" (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478 [243 Cal.Rptr. 902, 749 P.2d 339]), and therefore a judge could not reasonably have reached that decision under applicable law (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 393 [33 Cal.Rptr.3d 644]; *Smith v. Smith* (1969) 1 Cal.App.3d 952, 958 [82 Cal.Rptr. 282]). It is the appellant's burden on appeal to show the trial court abused its discretion. (*Ramos*, at p. 624.)

In the context of section 877.6, "[t]he trial court is given broad discretion in deciding whether a settlement is in 'good faith' for purposes of section 877.6, and its decision may be reversed only upon a showing of abuse of discretion. [Citation.] However, where the exercise of discretion on the basis of established criteria may yield but one conclusion, an abuse of discretion may be found and the appellate court may determine that a particular settlement lacks good faith within the meaning of the statute." (*TSI Seismic Tenant Space, Inc. v. Superior Court* (2007) 149 Cal.App.4th 159, 165 [56 Cal.Rptr.3d 751] (*TSI*).)

When an appellant contends the evidence is insufficient to support a judgment, order, or factual finding, we apply the substantial evidence standard of review. "Where findings of fact are challenged on a civil appeal, we are bound by the 'elementary, but often overlooked principle of law, that . . . the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the findings below. [Citation.] We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of

every reasonable inference and resolving all conflicts in its favor in accordance with the standard of review so long adhered to by this court." (*Jessup Farms v. Baldwin* (1983) 33 Cal.3d 639, 660 [190 Cal.Rptr. 355, 660 P.2d 813].) "Substantial evidence" is not synonymous with "any" evidence; rather, it means the evidence must be of ponderable legal significance, reasonable, credible, and of solid value. (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633 [29 Cal.Rptr.2d 191].) An appellate court presumes in favor of the judgment or order all reasonable inferences. (*Id.* at pp. 1632–1633.) If there is substantial evidence to support a finding, an appellate court must uphold that finding even if it would have made a different finding had it presided over the trial. (*Rupf v. Yan* (2000) 85 Cal.App.4th 411, 429–430 & fn. 5 [102 Cal.Rptr.2d 157]; *Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873–874 [197 Cal.Rptr. 925].) An appellate court does not reweigh the evidence or evaluate the credibility of witnesses, but rather defers to the trier of fact. (*Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968 [108 Cal.Rptr.2d 34]; *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631 [85 Cal.Rptr.2d 386].) "The substantial evidence [standard of review] applies to both express and implied findings of fact made by the superior court in its statement of decision rendered after a nonjury trial." (*SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 462 [17 Cal.Rptr.3d 96].)

## IV

### *Good Faith Settlement Determination*

SDGE contends the trial court abused its discretion by granting Owners' section 877.6 motion and dismissing SDGE's cross-complaint because, applying the relevant factors set forth in *Tech-Bilt*, no rational trial court could conclude the settlement was made in good faith and the evidence is insufficient to support the trial court's findings.

### A

■ As a preliminary matter, we first address SDGE's assertion that the trial court's order dismissing its cross-complaint against Association should be reversed because Association's corporate status was suspended, requiring all pleadings and other papers filed by Association in this action to be stricken. However, SDGE concedes that "[i]n the vast majority of cases," when a suspended corporation obtains a certificate of revivor, "corporate powers are restored, and such restoration has the effect of validating earlier acts taken in litigation." We previously granted Owners' motion for judicial notice of FTB's certificate of revivor for Association and, in part IIA, above, granted Owners' motion for judicial notice of the Secretary of State's

certificate showing Association's good standing and active corporate status. As we concluded above, because FTB issued a certificate of revivor and the Secretary of State issued a certificate stating Association is now in good standing, Association's current good standing as a corporation operates retroactively and therefore Association is deemed to have been active and in good standing at all times during this action and appeal. (*Center for Self-Improvement & Community Development v. Lennar Corp., supra,* 173 Cal.App.4th at p. 1553; *Peacock Hill Assn. v. Peacock Lagoon Constr. Co., supra,* 8 Cal.3d at pp. 373–374.) Accordingly, Association is deemed to have had the corporate capacity to properly file all pleadings and other papers during the course of this action, including its respondent's brief in this appeal. Therefore, we reject SDGE's assertion that the trial court's order dismissing its cross-complaint against Association should be reversed based on Association's suspended corporate status.

B

■ Under section 877.6, "[a]ny party to an action in which it is alleged that two or more parties are joint tortfeasors . . . shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff . . . and one or more alleged tortfeasors . . . ." (§ 877.6, subd. (a)(1).) "A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor . . . from any further claims against the settling tortfeasor . . . for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." (§ 877.6, subd. (c).) A good faith settlement determination also reduces the claims against the nonsettling defendants in the amount stipulated by the settlement. (§ 877, subd. (a).) The equitable policies of section 877.6 "include both the encouragement of settlements and the equitable allocation of costs among multiple tortfeasors." (*Tech-Bilt, supra,* 38 Cal.3d at pp. 498–499.) However, "there is often an inherent tension between the state's interest in encouraging the voluntary settlement of litigation and the state's interest in promoting a fair apportionment of liability among the defendants." (*Bay Development, Ltd. v. Superior Court* (1990) 50 Cal.3d 1012, 1018 [269 Cal.Rptr. 720, 791 P.2d 290] (*Bay Development*).)

■ In *Tech-Bilt*, the California Supreme Court identified certain nonexclusive factors that a trial court must consider in determining whether a settlement was made in good faith within the meaning of section 877.6: "[(1)] a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, [(2)] the amount paid in settlement, [(3)] the allocation of settlement proceeds among plaintiffs, and [(4)] a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. Other relevant considerations include [(5)] the financial conditions and

insurance policy limits of settling defendants, as well as [(6)] the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants." (*Tech-Bilt, supra*, 38 Cal.3d at p. 499.) The trial court's evaluation of the good faith of a settlement must "be made on the basis of *information available at the time of settlement*. '[A] defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of settlement, would estimate the settling defendant's liability to be.' " (*Ibid.*, italics added.)

"The party asserting the lack of good faith, who has the burden of proof on that issue (§ 877.6, subd. (d)), should be permitted to demonstrate, if he can, that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute. Such a demonstration would establish that the proposed settlement was not a 'settlement made in good faith' within the terms of section 877.6." (*Tech-Bilt, supra*, 38 Cal.3d at pp. 499–500.) The trial court's section 877.6 determination "should be made on the basis of experience rather than speculation." (*Tech-Bilt*, at p. 500.) " 'When testing the good faith of a settlement figure, a court may enlist the guidance of the judge's personal experience and of experts in the field.' " (*Ibid.*) "[A] determination as to whether a settlement is in good faith must be left to the discretion of the trial court." (*Id.* at p. 502.)

## C

In support of Owners' motion for a section 877.6 determination that their settlement with Cahill was made in good faith, they argued: "[A]t the time settlement in this matter was achieved, no party or entity believed that [Owners] shared any liability in this matter, evidenced by the fact that [Owners] had not been named by [Cahill] or any other party, SDGE had no Cross-Complaint on file in this matter, and no party or entity had articulated any theory of liability whatsoever under which [Owners] might be responsible for [Cahill's] injuries." Owners submitted the declaration of Rick L. Peterson, one of their attorneys, who stated in part: "In or about April 2009 and despite the fact [Owners] had not been named [as defendants in Cahill's action], [Owners] approached [Cahill] to discuss settlement in order to bring legal closure in this matter. After careful review and consideration of all the issues presented in this case and after actively participating in negotiations and settlement discussions, counsel for [Owners] and counsel for [Cahill] reached a settlement. [¶] [Owners] agreed to pay [Cahill] [$25,000] and in exchange, [Cahill] agreed to provide [Owners] with a fully executed settlement and release including a . . . [section] 1542 release." Peterson's declaration further stated: "At the time of the incident, [Cahill] was using an adjustable 30-foot Tucker extension pole, which was connected to a water source." It also stated: "The subject utility lines are marked 'High Voltage'

and readily visible from the roof top area where [Cahill] was working." Attached to his declaration were a photograph showing the high-voltage warning and a photograph showing Property's rooftop and adjacent utility lines.

On January 22, 2010, the trial court heard arguments of counsel on Owners' section 877.6 motion for a good faith settlement determination and then issued a minute order confirming its tentative ruling granting Owners' motion. At the hearing, the court stated: *"It is the Court's assessment here that* [Owners'] *liability under the circumstances, given this particular accident, is so remote that this settlement is in fact within the realm of an approvable good faith settlement,* so the tentative will be confirmed." (Italics added.) The minute order stated: "The court finds that sufficient evidence has been presented demonstrating that the settlement between [Cahill] and [Owners] is in good faith." The order then set forth the *Tech-Bilt* factors the court was required to consider in making that good faith settlement determination and noted that SDGE had the burden to prove the settlement was not made in good faith. The order stated:

"In this case, [SDGE] contends that the settlement is not a fair approximation of [Owners'] potential liability for a number of reasons. [SDGE] is correct that [Owners] could be found directly liable where their negligence contributes to [Cahill's] injuries. [Citation.] [SDGE] is also correct that a land owner has (at least under some circumstances) a duty to take affirmative action to remedy the power line height violation. [Citations.] However, . . . the pertinent violation is measured in inches. Would an ordinary and reasonable land owner even recognize the existence of this violation? More importantly, evidence exists demonstrating [SDGE's] independent knowledge of the spa deck (pole replacement).

"[SDGE] contends that [Owners'] violations of various building codes and the failure to permit the spa renders these parties more culpable. This argument lacks merit because these issues did not cause or contribute to the accident. In addition, liability on the part of any defendant is debatable given that the power line did not violate the applicable height restriction at the point of contact. There is evidence that the accident would have occurred in any event, even if the power line had been moved into compliance. Given all of these factors, it appears that the settlement amount is within the 'ballpark' of potential liability."

On January 29, the court issued a written order granting Owners' motion, determining the settlement was made in good faith within the meaning of section 877.6, and dismissing with prejudice all claims against Owners for equitable indemnity or other relief arising out of the incident (e.g., SDGE's

cross-complaint against Owners). On March 15, the trial court issued an order dismissing Owners' cross-complaint against SDGE.

### D

SDGE asserts the trial court abused its discretion in determining Owners' settlement with Cahill was made in good faith because, based on the relevant *Tech-Bilt* factors, no rational trial court could make that determination.

1. *Owners' Potential Liability.* Based on the trial court's statement at the January 22, 2010, hearing and its minute order, it appears the crux of the court's good faith settlement determination was that, based on the information available at the time of the settlement, Owners' potential liability was "so remote" that the settlement amount ($25,000) was within the ballpark of good faith settlements under section 877.6. Accordingly, we begin by addressing the first *Tech-Bilt* factor, which consists of two parts (i.e., a rough approximation of Cahill's total recovery and Owners' proportionate liability). We conclude the trial court could rationally find that, based on information available at the time of the settlement, a reasonable person could believe Owners had little, if any, potential liability for Cahill's injuries. As SDGE represents, it was undisputed that there was *no* General Order No. 95 clearance violation *at the point of Cahill's contact* with the electrical line because the 8.6-foot clearance exceeded the eight-foot minimum for "non-walkable" surfaces.[10] Therefore, in April 2009 Cahill and Owners presumably believed Owners had no potential liability to Cahill arising out of General Order No. 95 at the point of contact near the roof's southwest corner.

Nevertheless, the record supports an inference that in April 2009 Cahill was aware of the alleged General Order No. 95 minimum clearance violation near the Jacuzzi, which was located on the roof's northwest corner, *away from* the southwest corner where he contacted the electrical line. Based on the November 2008 survey performed for Cahill by David Grimes, the distance between the Jacuzzi's "walkable" wood deck and the nearest electrical line was 11.8 feet, slightly less than the 12-foot minimum that General Order No. 95 required. Despite Cahill's presumed knowledge of that apparent clearance violation, the record on appeal does not show that *in April 2009* Cahill had developed any specific theory of causation, and thus liability, based on that violation.[11] Rather, it appears Cahill did not develop and assert

---

[10] SDGE represents on appeal that "[i]t is . . . undisputed that, at the point of contact and injury, the vertical clearance between the top of the glass railing (a 'non-walkable' surface) that Mr. Cahill was washing and the closest conductor [(i.e., electrical line)] was 8.6 feet [citation], i.e., more than the eight feet required by [General Order No. 95]."

[11] Likewise, contrary to SDGE's assertion, assuming arguendo Owners were aware in April 2009 of the remote clearance violation involving the Jacuzzi's wood deck, there is no evidence

a specific theory of causation and resultant liability based on that remote clearance violation until December 2009 in the course of opposing SDGE's motion for summary judgment.

The record shows that *in December 2009* Cahill, in addressing the trial court's concern that such a remote clearance violation could not have been a substantial factor in causing his injuries, provided supplemental briefing and a declaration of an expert, Voyko Banjac, presenting a newly developed theory of causation, i.e., that had the electrical line been 12 feet from the wood deck of the Jacuzzi on the roof's northwest corner, then (based on Banjac's assumptions) the clearance distance of the electrical line at the point of contact on the southwest corner would have been sufficiently greater (i.e., 2.4 inches more) such that Cahill's pole would have been about *one inch short* of contacting that line and therefore the accident would not have occurred. Furthermore, on December 23, 2009, Cahill signed a declaration stating that (contrary to his July 2009 interrogatory response stating his pole was fully compacted and only seven feet long, or 84 inches, at the time of the accident) he had recently inspected that pole and now believed it was extended to 115 inches (i.e., nine feet seven inches) long at the time of the accident because one of its tubes was bent and could not be retracted.[12] Accordingly, at the time of the April 2009 settlement, Cahill had not yet developed and asserted his specific theory of causation, and thus liability, based on the remote clearance violation involving the Jacuzzi's wood deck. Absent knowledge of that theory or other viable theory of causation, Cahill and Owners presumably were unaware of any potential liability of Owners at the time of their April 2009 settlement. Accordingly, the trial court could rationally conclude that a reasonable person, based on the information available at the time of the April 2009 settlement, could believe Owners (and, possibly, SDGE) had little, if any, potential liability for Cahill's injuries.[13] Furthermore, the trial court also

Owners were aware of a viable theory of causation that would support their potential liability for Cahill's injuries. To the extent SDGE argues inferences to the contrary, it misapplies and/or misconstrues the applicable standard of review requiring us to make all presumptions and reasonable inferences in favor of the trial court's order.

[12] Curiously, despite Cahill's 115-inch estimate, Banjac assumed in his declaration that Cahill's pole was extended only 112 inches at the time of the accident. Had Banjac used Cahill's 115-inch estimate, he presumably would have concluded the pole would have contacted the electrical line even had SDGE's line been raised 2.4 inches to comply with General Order No. 95 and therefore failed to disabuse the trial court of its concern regarding the lack of legal causation.

[13] SDGE argues there is an inherent inconsistency between the trial court's good faith settlement determination and its subsequent order denying SDGE's motion for summary judgment. However, the determination of whether the settlement was made in good faith is based on information available in *April 2009* and is made from the perspective of what a reasonable person would believe is a reasonable settlement amount based on that information. In contrast, the trial court's *January 2010* order denying SDGE's motion for summary judgment against Cahill was based on the parties' separate statements of undisputed or

could, and presumably did, consider its own judicial experience in concluding Owners' potential liability was "so remote" that the settlement amount ($25,000) was within the ballpark of good faith settlements under section 877.6.

■ Although in opposing Owners' section 877.6 motion, SDGE asserted Cahill's damages were conservatively estimated at about $5 million and he had claimed $40 million in damages, the trial court could have concluded those amounts were exaggerated and, in any event, the amount of his damages nevertheless greatly exceeded its estimate of Cahill's total recovery. (Cf. *Bay Development, supra*, 50 Cal.3d at p. 1028 [abundant evidence suggested plaintiff's $1 million damages claim was grossly exaggerated].) "A plaintiff's claims for damages are not determinative in finding [a settlement was made in] good faith. [Citation.] Rather, the court is called upon to make a 'rough approximation' of what the plaintiff would actually recover." (*West v. Superior Court* (1994) 27 Cal.App.4th 1625, 1636 [34 Cal.Rptr.2d 409].) In this case the court could rationally conclude, based on April 2009 information, that Cahill's lack of any viable theory of causation, and thus liability, against Owners (and SDGE) based on the remote clearance violation discussed above, would provide Cahill little, if any, chance of recovery at trial.[14] Furthermore, as Owners assert, the court could rationally conclude, based on April 2009 information and its own judicial experience, that Cahill's negligence was likely the primary, if not sole, cause of his injuries, thereby

disputed material facts and whether there existed, as a matter of law, a triable issue of material fact at that time that precluded summary judgment for SDGE. Because the pertinent legal issues were different and, more importantly, the information considered was different (primarily because of the different relevant time periods—Apr. 2009 versus Jan. 2010), we perceive no inherent inconsistency between the trial court's good faith settlement determination and its order denying SDGE's motion for summary judgment. The good faith settlement determination was made based on *April 2009* information when Cahill had not yet developed his theory of causation based on the remote clearance violation, while the motion for summary judgment was decided primarily on Cahill's presentation of that new theory of causation developed in or about *December 2009*.

[14] As SDGE notes, the trial court concluded Owners *could* be found directly liable *if* their negligence contributed to or caused Cahill's injuries, rejecting Owners' apparent arguments to the contrary. (See, e.g., *Privette v. Superior Court* (1993) 5 Cal.4th 689, 701 [21 Cal.Rptr.2d 72, 854 P.2d 721].) However, we need not substantively discuss the merits of any *Privette*-type defense to vicarious or hirer liability Owners may have had because the trial court assumed that defense would not necessarily preclude Owners' liability, but nevertheless concluded a reasonable person could believe Owners' potential liability was "so remote" based on any direct negligence that the amount of the settlement was within the ballpark of reasonable settlement amounts. Likewise, we need not substantively address SDGE's assertion that Owners' purported building code and permit violations made them potentially liable to Cahill (and to SDGE in equitable indemnity). Nevertheless, the trial court found such violations were not a substantial factor in causing Cahill's injuries, implicitly finding a reasonable person would likely not find Owners' violations were a legal cause of Cahill's injuries. Making all presumptions and reasonable inferences and construing the evidence in favor of the order, we conclude there is substantial evidence to support that finding.

reducing, if not eliminating, his potential total recovery at trial. Based on the information available in April 2009, the trial court could rationally conclude a reasonable person could believe Cahill's approximate total recovery at trial would be insubstantial, if any, and Owners would likely have no proportionate liability for that total recovery based on the absence of a viable causation theory in April 2009.[15]

Furthermore, contrary to SDGE's assertion, there is nothing in the record showing the trial court did not consider Owners' potential liability in comparison to SDGE's potential liability in determining what Owners' proportionate liability would likely be based on information available in April 2009. Although a trial court presumably must consider what potential liability for equitable indemnity a settling defendant may have to a nonsettling defendant (see, e.g., *Long Beach Memorial Medical Center v. Superior Court* (2009) 172 Cal.App.4th 865, 873–875 [91 Cal.Rptr.3d 494] (*Long Beach*); *TSI, supra,* 149 Cal.App.4th at p. 166), a settling defendant generally cannot have any liability for equitable indemnity to a nonsettling defendant if it has no liability to the plaintiff (e.g., because the settling defendant's actions or omissions were not a substantial factor in causing the plaintiff's damages). Accordingly, because the trial court in this case presumably concluded Owners' potential liability was "so remote" based on the lack of causation, the court could rationally conclude Owners had no greater liability to SDGE for equitable indemnity than it had to Cahill for negligence.

SDGE argues the trial court abused its discretion by determining the settlement was made in good faith because Cahill was unaware in April 2009 of Owners' potential liability. In its novel approach, unsupported by any citations to case law or other authority, SDGE asserts a good faith settlement requires, at a minimum, honest bargaining between a settling defendant and a plaintiff who has actual knowledge of that defendant's potential liability. Under SDGE's theory, because Cahill was unaware in April 2009 of Owners' potential liability, the settling parties could not bargain fairly and reach a good faith settlement.[16] Contrary to SDGE's apparent assertion, there is no requirement that a plaintiff must conduct a reasonable investigation and perform reasonable diligence to determine any potential

---

[15] Assuming arguendo a reasonable person would conclude that, based on April 2009 information, Owners would likely be found jointly liable with SDGE, SDGE does not persuade us either that a reasonable person would have concluded Cahill's total recovery would have been a substantial amount or that Owners would have a greater proportionate liability than SDGE for that amount. SDGE's argument that Owners would have a greater proportionate liability is conclusory and improperly based on inferences from April 2009 information *favorable to it* rather than to Owners.

[16] To the extent SDGE asserts there could be no good faith settlement because Owners were not named as defendants at the time of the April 2009 settlement, it does not cite any case so holding and case law appears to hold otherwise. (See, e.g., *County of Los Angeles v. Guerrero*

liability of a settling defendant before entering into a good faith settlement. Such a requirement would be contrary to the public policy encouraging settlements and would discourage parties from entering into settlements early in the litigation process before incurring substantial litigation costs. Likewise, there is no requirement that a settling defendant disclose to a plaintiff all theories supporting its potential liability, or evidence tending to prove its liability, before a good faith settlement can be made. We are unpersuaded by, and reject, SDGE's unsupported novel theory requiring that a plaintiff know of the settling defendant's potential liability before a good faith settlement can be made.

Furthermore, to the extent SDGE argues Owners did not present evidence showing they actually engaged in "arm's length" bargaining with Cahill regarding the amount of the settlement and Owners' potential liability before entering into the settlement, SDGE presents no case law or other authority persuading us Owners had the burden to do so. On the contrary, section 877.6, subdivision (d), provides: "The party asserting the lack of good faith [(e.g., SDGE)] shall have the burden of proof on that issue." Because *SDGE* did not present any evidence showing Owners and Cahill did not bargain in good faith, the trial court could rationally conclude SDGE did not carry its burden to show they did not bargain in good faith in reaching their April 2009 settlement.

2. *Amount Paid in Settlement.* SDGE also asserts the amount of the settlement ($25,000) is grossly disproportionate to Owners' potential liability and "out of the ballpark" of the range of reasonable settlement amounts in the circumstances of this case. SDGE's primary argument is that the $25,000 settlement amount does not bear a reasonable relationship to Owners' potential liability of $5 million or more (i.e., representing only about one-half of 1 percent of their potential liability) so that the settlement amount is not "in the ballpark" of reasonable settlements under *Tech-Bilt.* However, SDGE's argument is based on the faulty premises that Cahill's total recovery would be the same as his damages (e.g., $5 million) and that Owners' proportionate share of that total recovery would be substantial. However, in so doing, SDGE misconstrues and/or misapplies the applicable standard of review on appeal.[17]

(1989) 209 Cal.App.3d 1149, 1155 [257 Cal.Rptr. 787] ["[T]he fact that the instant settlement was entered into early [(before litigation commenced)] does not preclude a finding of good faith."].)

[17] That misconstruction and/or misapplication is reflected in SDGE's argument: "[A] key question arises: does the amount paid in settlement, $25,000, bear a reasonable relationship to [Owners'] potential liability for $5 million?" In so arguing, SDGE wrongly assumes that Owners' potential liability was necessarily the same as Cahill's damages (i.e., $5 million). However, as we discussed above, the trial court could rationally conclude that, based on information available in April 2009, Cahill's total recovery would be an insubstantial amount (i.e., not equal, or even close, to his actual damages) and Owners would likely have no

We make all presumptions and reasonable inferences in favor of supporting the trial court's decision. As we discussed above, based on the information available in April 2009, the trial court could rationally conclude a reasonable person could believe Cahill's approximate total recovery at trial would be insubstantial, if any, and Owners would likely have no proportionate liability for that total recovery based on the absence of a viable causation theory in April 2009. Accordingly, although $25,000 may, on its face, seem like an insignificant or unreasonable settlement amount in comparison to Cahill's presumed damages of $5 million or more, when that settlement amount is compared to Owners' potential liability, based on available April 2009 information, we cannot conclude the trial court abused its discretion by concluding the $25,000 settlement amount was within the ballpark of reasonable settlement amounts in the circumstances of this case.

SDGE had the burden below to show the settlement amount was "so far 'out of the ballpark' in relation to" the *Tech-Bilt* factors that the settlement was inconsistent with the equitable objectives of section 877.6. (*Tech-Bilt, supra*, 38 Cal.3d at pp. 499–500.) SDGE has not carried its burden on appeal to show the trial court abused its discretion by concluding SDGE did not carry its burden of proof below. SDGE's citation of various cases in which courts concluded the settlement amounts were unreasonably low in comparison to the settling defendants' potential liability does not persuade us the settlement amount in the circumstances of this case was unreasonably low based on the information available in April 2009. (See, e.g., *Long Beach, supra*, 172 Cal.App.4th 865; *TSI, supra*, 149 Cal.App.4th 159; *Greshko v. County of Los Angeles, supra*, 194 Cal.App.3d 822; *Gehl Brothers Manufacturing Co. v. Superior Court* (1986) 183 Cal.App.3d 178 [228 Cal.Rptr. 19].) Although, as SDGE notes, in those cases settlement amounts representing 2 percent or less of the plaintiffs' damages were disapproved as unreasonably low in comparison to the settling defendants' proportionate share of the plaintiffs' total damages, those cases are factually inapposite to this case and do not persuade us the trial court in this case could not rationally conclude the $25,000 settlement amount was not disproportionate to Owners' potential liability based on the information available in April 2009. Furthermore, Owners cite other cases in which relatively insubstantial settlement amounts were upheld as made in good faith. (See, e.g., *Bay*

---

proportionate liability for that total recovery. Contrary to SDGE's apparent assumption, in applying the *Tech-Bilt* factors, a court does not simply compare the settlement amount to the plaintiff's claimed, or actual, damages in determining whether the settlement amount was "within the ballpark" of reasonable settlements. Rather, a court must first make a rough approximation of the total amount the plaintiff is likely to recover, then determine what, if any, the settling defendant's proportionate share of that total recovery would be, and then determine whether the settlement amount was "within the ballpark" of reasonable settlement amounts based on the first two factors. The "ballpark" of reasonable settlement amounts cannot be determined without considering those first two factors.

*Development, supra,* 50 Cal.3d at p. 1028 [$30,000 settlement amount versus $1 million claimed damages]; *Wysong & Miles Co. v. Western Industrial Movers* (1983) 143 Cal.App.3d 278, 283 [191 Cal.Rptr. 671] [$65,000 settlement amount versus $7 million claimed damages]; see also *Wilshire, supra,* 86 Cal.App.4th at pp. 631–632 [$50,000 settlement amount versus plaintiffs' $1.425 million claimed total case value].) None of the cases cited by the parties persuade us the trial court either abused or did not abuse its discretion in this case. Rather, because each case must be decided based on its particular circumstances and the trial court may consider its own judicial experience, we conclude SDGE's cited cases do not show the trial court in this case abused its discretion in determining a reasonable person could believe, based on April 2009 information, that the $25,000 settlement amount was within the ballpark of reasonable settlements and was not disproportionate to Owners' potential liability in the circumstances of this case.

**(10)** 3. *Other Tech-Bilt Factors.* SDGE provides little, if any, substantive analysis on the remaining *Tech-Bilt* factors. Accordingly, we will only briefly address them. As SDGE notes, because there is only one plaintiff in this case (i.e., Cahill), the factor regarding "the allocation of settlement proceeds among plaintiffs" does not apply. (*Tech-Bilt, supra,* 38 Cal.3d at p. 499.) Next, in determining whether the settlement was made in good faith, we presume the trial court "recogni[zed] that a settlor [(e.g., Owners)] should pay less in settlement than [they] would if [they] were found liable after a trial." (*Ibid.*) Furthermore, that factor supports, rather than detracts from, the trial court's good faith settlement determination.

As SDGE notes, in support of their section 877.6 motion, Owners did not present any evidence of their financial condition or liability insurance policy limits. (*Tech-Bilt, supra,* 38 Cal.3d at p. 499.) However, that omission did not preclude the trial court from finding the April 2009 settlement was made in good faith. *Tech-Bilt* does not require settling defendants to present such evidence. Rather, if anything, because SDGE had the burden to prove the settlement was not made in good faith, it could have presented evidence on those issues to show Owners had the financial capacity or insurance coverage limits to pay a reasonable settlement amount. Nevertheless, because the trial court concluded $25,000 was a reasonable, good faith settlement amount without "discounting" that amount based on any purported financial insolvency or insurance limitations, that *Tech-Bilt* factor was irrelevant to the court's determination.

Finally, we consider "the existence of collusion, fraud, or tortious conduct aimed to injure the interests of [SDGE.]" (*Tech-Bilt, supra,* 38 Cal.3d at p. 499.) Making all presumptions and reasonable inferences to support the trial court's determination, we conclude there is nothing in the record

showing Owners, either alone or together with Cahill, entered into the April 2009 settlement with the goal of injuring SDGE's interests. On the contrary, in support of Owners' section 877.6 motion, Peterson declared that in April 2009 Owners "approached [Cahill] to discuss settlement in order to bring legal closure in this matter." Owners also argued that at the time of the settlement in April 2009, Cahill had not named Owners as defendants in his complaint, SDGE had not filed any cross-complaint alleging Owners were liable to it for equitable indemnity or otherwise, and "no party . . . had articulated any theory of liability whatsoever under which [Owners] might be responsible for [Cahill's] injuries." In opposing Owners' section 877.6 motion, SDGE did not argue, much less present any evidence showing, that the April 2009 settlement was intended to injure its interests.

Making all presumptions and reasonable inferences in favor of the trial court's order, the trial court could rationally conclude that neither Owners nor Cahill had a goal of injuring SDGE's interests by entering into the April 2009 settlement. Rather, the court could rationally conclude Owners entered into an early settlement with Cahill to essentially preclude any possibility that he would add them as defendants despite the absence of any viable theory of liability at that time, and, as a result, they would save potential litigation costs and "buy their peace." Unlike other cases, there was no evidence showing Owners entered into the settlement with Cahill to place the entire potential liability burden on a cross-defendant or cross-complainant (i.e., SDGE). (Cf. *Long Beach, supra,* 172 Cal.App.4th at pp. 875–877; *Mattco Forge, Inc. v. Arthur Young & Co.* (1995) 38 Cal.App.4th 1337, 1353–1354 [45 Cal.Rptr.2d 581].) Because the trial court rationally concluded a reasonable person could believe Owners likely would have no potential liability to Cahill (or, thus, SDGE), the court could reasonably infer the settlement was not made with a goal of injuring SDGE. *Mattco Forge* stated: "If a cross-defendant without legal liability to the plaintiff settles with the plaintiff in an amount *within the reasonable range* of what the cross-defendant's liability would be, the interests of the nonsettling cross-complainant are protected, and both the policies [of section 877.6] of encouraging settlements and equitable financial sharing are served." (*Mattco Forge,* at p. 1354.) Based on the record in this case, the trial court could rationally conclude the $25,000 settlement was *not* disproportionately low and Owners did not enter into that settlement "solely to obtain immunity from" SDGE. (*Ibid.*)

4. *Conclusion.* Based on our review of the record on appeal and making all presumptions and reasonable inferences in favor of the trial court's good faith settlement determination, we conclude the trial court did not abuse its discretion in considering the *Tech-Bilt* factors and determining the April 2009 settlement between Owners and Cahill was made in good faith within the meaning of section 877.6. The trial court did not abuse its discretion by concluding the $25,000 settlement amount was not " 'grossly

disproportionate to what a reasonable person, at the time of the [April 2009] settlement, would estimate [Owners'] liability to be.' " (*Tech-Bilt, supra*, 38 Cal.3d at p. 499.)

## DISPOSITION

The order is affirmed.

Huffman, Acting P. J., and Haller, J., concurred.