Filed 9/3/24  In re G.D. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re G.D., a Person Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>J.S.,<br><br>        Defendant and Appellant;<br><br>H.D.III,<br><br>        Defendant. | A168835<br><br>(Contra Costa County Super. Ct. No. J21-00555) |

J.S. (Mother) appeals from a judgment entered after a contested hearing held pursuant to Welfare and Institutions Code[1] section 336.26, terminating her and Father's parental rights over G.D.  The Bureau removed G.D. from the parents' home due to physical abuse.  Mother argues that the Bureau failed in its duty of inquiry pursuant to the Indian Child Welfare Act of 1978, 25 U.S.C. § 1901 et seq. (ICWA), and that the juvenile court failed to order a complete ICWA inquiry.  Mother asks this court to reverse the

---

[1]Undesignated statutory references are to the Welfare and Institutions Code.

juvenile court's findings that ICWA does not apply and remand the matter to complete the requisite inquiry. The Bureau concedes some error but contends that the error was harmless because there was no indication that other extended family members had information that could bear meaningfully on whether G.D. has Indian[2] ancestry.

We conclude that the Bureau's inquiry was not sufficient to support its finding that ICWA did not apply to G.D. During the pendency of this appeal, our Supreme Court decided *In re Dezi C.* (Aug. 19, 2024, No. S275578) 2024 Cal. Lexis 4634 (*Dezi C.*), which establishes a rule of conditional reversal in cases, like this one, where the child welfare agency's initial ICWA inquiry was inadequate. Pursuant to *Dezi C.*, we must conditionally reverse and remand this case to ensure compliance with ICWA.

## BACKGROUND

After medical tests confirmed severe physical abuse of then-infant G.D., the Bureau filed a dependency petition pursuant to section 300 and removed G.D. from the home he shared with his parents and extended maternal family. A Bureau social worker questioned both Mother and Father about possible Indian ancestry and completed forms indicating that the inquiry gave the social worker no reason to believe G.D. is or may be an Indian child. Mother and Father completed separate forms, both indicating that they did not have Indian ancestry. Both parents had their own child welfare histories.

At the detention hearing held two days after the removal, the court inquired of both parents, maternal grandmother, and maternal step-

---

[2] Because ICWA uses the term "Indian" and "Indian child" we do so as well, even though we recognize that other terms, such as Native American, Indigenous American, or American Indian may be preferable. (*In re A.A.* (2023) 88 Cal.App.5th 393, 396, fn. 1.)

grandfather concerning possible Indian ancestry; all denied any such ancestry. In the jurisdiction and detention report prepared for the hearing, the Bureau noted that the parents' household was composed of maternal relatives, including maternal great-grandparents, maternal cousins, and a maternal great-uncle. The court found no reason to believe or know that G.D. is an Indian child and on that basis found that ICWA did not apply.

At the jurisdiction and disposition hearings, the juvenile court found that G.D. came within its jurisdiction under section 300, and ordered continued family reunification services for the parents. In its disposition report, the Bureau identified several extended family members: Mother's father, from whom she was estranged; Father's parents; Father's paternal aunt, who raised him; Father's paternal uncle; and Father's cousins, with whom he was raised as a sibling. The report noted that the Bureau had convened a Child and Family Team meeting with approximately 20 people in attendance, representing Mother's "strong support network of family members." As a result of that meeting, Mother's aunt asked the Bureau to consider placing G.D. with her. The report stated that "multiple maternal relatives" joined Mother's visits with G.D. and that a maternal cousin joined a second family meeting. The report also noted that Mother feared that Father's relatives would "threaten and kill her" if she pursued a domestic violence restraining order against him.

In advance of a status hearing, the Bureau submitted an ICWA further inquiry due diligence report, asking the court to find no reason to believe that G.D. was an Indian child. The report documents that the Bureau mailed four letters to possible maternal relatives and five letters to possible paternal relatives to determine family placement options for G.D. No "confirmed relatives" responded to the letter inquiry. The maternal grandmother stated

that her current husband (maternal step-grandfather) was a member of the Pomo Indian Tribe until five years ago, but that G.D. is not related by blood to his step-grandfather and does not have Indian ancestry. The sections in the report for information regarding G.D.'s maternal grandfather and maternal great-grandparents, and for his paternal grandparents and great-grandparents, were left blank, as was the section describing "efforts . . . to further inquire as to the child's possible Indian status."

Mother and maternal grandparents were present at the status hearing. The juvenile court asked the parties for any additional evidence about potential ancestry; they provided none. The court found no reason to believe that G.D. was an Indian child, concluded that ICWA did not apply, and terminated reunification services for the parents.

At the section 366.26 permanency planning hearing, a maternal aunt, a family friend, and the maternal grandparents and great-grandparents were present. The court noted its prior finding that ICWA did not apply, terminated parental rights, and found G.D. adoptable.

## DISCUSSION

Mother appeals from the juvenile court's orders terminating her parental rights and setting a permanent plan of adoption for G.D. She contends that the Bureau and juvenile court did not satisfy the requirements of ICWA, including by not conducting a complete inquiry into whether G.D. is an Indian child.

### I. ICWA Inquiry and Notice

ICWA applies to any child defined under federal law as Indian. (25 U.S.C. § 1901, et seq.) An Indian child is an unmarried person under the age of eighteen who is either a member of a federally recognized Indian tribe or is the biological child of a member of such a tribe and is eligible for

4

membership in the tribe.  (*Id.* § 1903(4); *In re D.M.* (2024) 101 Cal.App.5th 1016, 1044, review granted July 24, 2024, S285537.)  ICWA was enacted "in response to 'abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' "  (*In re L.B.* (2023) 98 Cal.App.5th 512, 518 (*L.B.*).)

Pursuant to ICWA, the juvenile court and local agency responsible for implementing child welfare law "have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . has been filed, is or may be an Indian child."  (§ 224.2, subd. (a); *In re Antonio R.* (2022) 76 Cal.App.5th 421.)  "The continuing duty to inquire . . . '[includes both] the initial duty to inquire . . . [and] the duty of further inquiry.' "  (*In re Y.W.* (2021) 70 Cal.App.5th 542, 552.)

The duty to inquire begins with initial contact and requires the juvenile court and agency to ask certain individuals whether the child may be an Indian child.  (§ 224.2, subds. (a)–(c).)  Section 224.2, subdivision (b), requires the agency to inquire whether a child in its temporary custody has Indian ancestry.  This "[i]nquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting the child abuse or neglect, whether the child is, or may be, an Indian child . . . ."  (§ 224.2, subd. (b); see Cal. Rules of Court, rule 5.481(a)(1) [requiring same inquiry for children in juvenile dependency proceedings generally] (Rule 5.481).)

ICWA defines "extended family member" as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent."  (25 U.S.C. § 1903(2); see § 224.1, subd. (c) ["As

5

used in connection with an Indian child custody proceeding . . . 'extended family member' . . . shall be defined as provided in Section 1903 of [ICWA]"].)

If, after the initial inquiry, there is "reason to believe" the child is an Indian child, but there is not enough information to have "reason to know" that the child is an Indian child, the agency must make "further inquiry." (§ 224.2, subd. (e).)  Then, if "the court knows or has reason to know . . . that an Indian child is involved," notice must be provided to the "parent or Indian custodian and the Indian child's tribe."  (25 U.S.C. § 1912, subd. (a); see § 224.3, subd. (a).)

## II.    The ICWA Inquiry

### A.  Standard of Review

"A trial court's determination that 'an [ICWA] inquiry was "adequate" and an agency acted with appropriate diligence' is reviewed for abuse of discretion."  (*L.B.*, *supra*, 98 Cal.App.5th at p. 516; see *Dezi C.*, *supra*, 2024 Cal. Lexis 4634, at pp. *18–*19.)  We follow our determination in *L.B.* as to what a proper ICWA inquiry requires, although this question is pending in our Supreme Court.  (*In re Delila D.* (2023) 93 Cal.App.5th 953, review granted Sept. 27, 2023, S281447; see *Estate of Sapp* (2019) 36 Cal.App.5th 86, 109, fn. 9 ["Absent a compelling reason, the Courts of Appeal are normally loath to overrule prior decisions from another panel of . . . the same division"].)

### B. Adequacy of the Inquiry

The Bureau concedes on appeal that its inquiry and that of the juvenile court were "not flawless" and "not ideal," but asserts that it "substantially complied with statutory requirements."  The Bureau does not, however, support its assertion of substantial compliance with authority or reasoned argument or otherwise genuinely dispute its error.  (Cal. Rules of Court,

6

rule 8.204(a)(1)(B); *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [" 'Appellate briefs must provide argument and legal authority for the positions taken. "When an appellant . . . asserts [a point] but fails to support it with reasoned argument and citations to authority, we treat the point as waived" ' "].) Nor does the Bureau provide authority indicating that substantial compliance with ICWA is sufficient for our purposes. On this showing, we cannot conclude that the Bureau's and juvenile court's ICWA inquiries were adequate. And under our decision in *L.B.*, the initial inquiry, alone, was inadequate because the record indicates that the Bureau was aware of available extended family members and other interested individuals but did not ask them about G.D.'s ancestry. (*L.B.*, *supra*, 98 Cal.App.5th at pp. 518–519; see also *In re Jerry R.* (2023) 95 Cal.App.5th 388, 429 ["On the children's paternal side, there is no indication the agency asked anyone other than Father and Mother about possible Indian ancestry. This is patently insufficient"].)

The Bureau also states that the adequacy of its ICWA inquiry here does not turn on its compliance with the initial inquiry requirements set forth in section 224.2, subdivision (a), the provision under review in our Supreme Court. Because it conducted a *further* inquiry—as reflected in its ICWA further inquiry due diligence report—the Bureau suggests that we review the adequacy of the ICWA inquiry overall, not just the initial inquiry. Mother appears to agree, and did not file a reply brief, so the issue is effectively undisputed. The further inquiry report, however, contains no meaningfully different information and discloses no additional ICWA contacts than those identified at the early stages of the proceedings—i.e., that both parents and maternal grandparents stated G.D. did not have Indian ancestry. The Bureau sent inquiry letters to several possible maternal and paternal

7

relatives, but there is no indication that those letters requested information related to ICWA. It is not clear whether any relatives responded to the letters and, if so, what their responses were; the Bureau reported that it did not receive responses from any "confirmed" relatives, not that it received no responses or that it investigated the familial relationship between G.D. and any unconfirmed relatives who responded. We similarly cannot discern the extent to which any unconfirmed relatives who were sent letters are the same as those identified elsewhere in the record. Finally, both parents had child welfare histories of their own; that they were estranged from close biological family members could indicate they were not "fully informed" of their own ancestry and that additional inquiry of their available relatives was essential to ascertain or confirm G.D.'s status. (*H.A. v. Superior Court* (2024) 101 Cal.App.5th 956, 963 (*H.A.*).) The record does not indicate, and the Bureau does not argue, that it could not identify or contact the absent biological family members. Accordingly, we next consider what approach *Dezi C.* requires when the agency's overall ICWA inquiry was inadequate.

## III. Prejudice

Our Supreme Court recently decided *Dezi C.*, which holds that an inadequate initial ICWA inquiry "requires conditional reversal with directions for the child welfare agency to comply with the inquiry requirement of section 224.2, document its inquiry in compliance with [R]ule 5.481(a)(5), and when necessary, comply with the notice provision of section 224.3." (*Dezi C., supra*, 2024 Cal. Lexis 4634, at p. *23.) *Dezi C.* explains that this approach is necessary because, when an initial inquiry is inadequate, "it is impossible to ascertain whether the agency's error is prejudicial." (*Ibid.*; see also *In re Rylei S.* (2022) 81 Cal.App.5th 309, 324 ["Because we do not know what we do not know," the failure to make

8

inquiries consistent with section 224.2 requires reversal].) Applying *Dezi C.*, we conclude that it is not possible, on this record, to discern whether the inadequacy of the Bureau's overall ICWA inquiry was prejudicial. " '[E]nsuring a proper, adequate, and duly diligent inquiry at the initial stage of the compliance process is foundational to fulfilling the purpose underlying ICWA and related California law.' " (*Dezi C.*, *supra*, 2024 Cal. Lexis 4634, at p. *28.) As noted above, although the Bureau submitted an ICWA "further inquiry" report, it contained no meaningful additional information. Consequently, we must conditionally reverse to allow the Bureau to "make additional inquiry and documentation efforts consistent with its duties," and for the juvenile court to "hold a hearing thereafter to determine whether, in light of the outcome of the inquiry as documented, ICWA applies." (*Id.* at p. *25.) We do, however, provide some guidance for the Bureau and juvenile court on remand.

There were many relatives and interested individuals whom the Bureau identified, including several who participated in hearings, family meetings, and visitation with G.D. Because many of these individuals were present and involved at various stage of the proceedings, we assume the Bureau would not have to expend considerable effort to inquire of them regarding G.D.'s possible Indian ancestry. (*Dezi C.*, *supra*, 2024 Cal. Lexis 4634, at p. *37 [noting cases stating duty to inquire is " 'slight and swift' "].) Many were maternal relatives, who might not have new or different ICWA information from what Mother and maternal grandparents had already provided. But Mother was estranged from her biological father and there is no indication in the record that the Bureau attempted to contact or request ICWA-related information from Mother's paternal relatives. In addition, there was no indication that the Bureau sought ICWA-related information

9

from Father's relatives, notwithstanding that the Bureau was aware of at least Father's paternal aunt, uncle, and cousins, in whose household he was raised, and that his relatives were sufficiently accessible that Mother feared they would harm her if she sought a restraining order against Father.

We do not, of course, mean to imply that the Bureau is necessarily required to investigate each of these leads on remand; we merely note the multiple sources of potentially relevant ICWA information that appear in the existing record. (See *H.A.*, *supra*, 101 Cal.App.5th at p. 966 [agency " 'is not required to "cast about" for information or pursue unproductive investigative leads,' " but must "diligently discharge" its duty "to locate and interview family members who might have pertinent information"].) "[S]ection 224.2 'does not require the agency to "find" unknown relatives and others who have an interest in the child, merely to make reasonable inquiries. The operative concept is those people who are reasonably available to help the agency with its investigation into whether the child has any potential Indian ancestry should be asked.' " (*Dezi C.*, *supra*, 2024 Cal. Lexis 4634, at p. *32.)

In summary, on remand, the Bureau should, at a minimum, attempt to contact and make ICWA inquiries of Mother's biological father and any of Mother's paternal aunts, uncles, siblings, cousins, and nieces and nephews whom the Bureau can identify with reasonable diligence, along with the maternal great-grandparents, aunt, cousin, family friend, and others who joined the family team meeting. On Father's side, the Bureau should contact and inquire of Father's biological mother and biological grandparents;[3] any biological siblings, nieces, and nephews; paternal aunt, uncle, and cousins; and any other of Father's biological relatives whom the Bureau can identify

---

[3] Father's biological father died shortly after G.D. was brought to the Bureau's attention.

10

with reasonable diligence.  The Bureau should also follow up with any unconfirmed relatives who responded to its letters and inquire whether they have any information relating to whether G.D. has Indian ancestry.

## DISPOSITION

The judgment is conditionally reversed.  The juvenile court shall order the Bureau to complete the initial and further ICWA inquiry, including the specific inquiries identified above; to document its inquiry pursuant to the requirements of Rule 5.841(a)(5); and to provide notice if and as required by section 224.3.  If evidence of G.D.'s Indian heritage is uncovered, the court shall proceed in conformity with ICWA and related California law.  If not, the juvenile court shall reinstate the judgment immediately.

GOLDMAN, J.

WE CONCUR:

STREETER, Acting P. J.
DOUGLAS, J. [*]

---

[*] Judge of the Superior Court of Contra Costa County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11