Filed 5/21/25  In re M.R. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re M.R., a Person Coming Under the Juvenile Court Law. | B341001 (Los Angeles County Super. Ct. No. 21CCJP00628D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. L.R., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen C. Marpet, Judge Pro Tempore. Affirmed.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Aileen Wong, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

## I. INTRODUCTION

L.R. (mother) appeals from the juvenile court's order terminating parental rights to M.R. (the child) pursuant to Welfare and Institutions Code section 366.26.[1]  She contends the court erred by failing to conduct the analysis described in *In re Caden C.* (2021) 11 Cal.5th 614 (*Caden C.*) when determining that the parental benefit exception in section 366.26, subdivision (c)(1)(B)(i) did not apply.[2]  We affirm.

## II. BACKGROUND

### A. *Detention and Jurisdiction*

On February 5, 2021, the child (born August 2018) was detained from mother and placed with maternal grandmother and adult half sibling H.R. in Fresno.  Maternal grandmother had been caring for the child since his birth.  In its March 11,

---

[1]     All further statutory citations are to the Welfare and Institutions Code.

[2]     The child's father is not a party to this appeal.

2021, jurisdiction/disposition report, the Los Angeles County Department of Children and Family Services (Department) noted that the child had very limited speech for his age, threw uncontrollable tantrums, hit his caregivers, and rocked himself for soothing purposes.

On April 30, 2021, the juvenile court sustained an amended section 300 petition that alleged the following counts:

a-1, b-1, j-1.  Mother physically abused the child's sibling, J.R., which placed the child at risk of harm.

a-2, b-5, j-4.  Mother physically abused the child's sibling, D.O., which placed the child at risk of harm.

a-3, b-6, j-5.  Mother physically abused the child's sibling C.O., which placed the child at risk of harm.

The juvenile court ordered mother to participate in family reunification services and granted mother monitored visits.

On June 1, 2021, the juvenile court ordered the child removed from his parents.

B.      *Reunification*

On January 20, 2023, the juvenile court conducted a review hearing, terminated reunification services, and set the matter for a section 366.26 hearing.

On August 18, 2023, the Department filed a section 366.26 report.  The Department explained that maternal grandmother and H.R. regularly collaborated with education and services providers to ensure that the child's needs were met.  Further, they were attentive to the child and ensured that the child continued to thrive.  The child was "non-verbal" and was unable to respond to the social worker's question about his visits with or

3

opinions about mother.[3]  Maternal grandmother reported that the child did not experience distress when he was unable to visit with mother.  Moreover, the child exhibited an increase in aggressive behavior when he returned from visits.

From July to September 2023, mother had consistent visits with the child.  During that period, the child would return to his caregivers' home visibly upset and became physically and verbally aggressive with others.  Mother often shortened her scheduled visits with the child because the child wanted to return home early.

On December 28, 2023, the Department filed a status review report.  The child appeared happy and comfortable with maternal grandmother and H.R.  The child, however, had a limited ability to communicate.  Mother's visits with the child were inconsistent.  During her visits, mother would not engage with the child and would instead argue with the child's half siblings.  Mother would also return the child early to maternal grandmother and H.R.  She would knock loudly, push him through the door, and complain about his behavior.

C.    *Section 366.26 Hearing*

At the September 3, 2024, section 366.26 hearing, mother's counsel requested that the juvenile court not terminate parental rights but instead place the child in a legal guardianship.

---

[3]    Mother's contention that there "was no meaningful statement, or attempt by the Department to obtain one, regarding the minor's feelings and attitudes towards . . . [m]other" is meritless.

4

Mother did not argue that the beneficial parental relationship exception to the termination of parental rights applied.

The child's counsel argued that mother could not demonstrate the exception set forth at section 366.26, subdivision (c)(1)(B)(i) and *Caden C., supra*, 11 Cal.5th 614 applied.  The child's counsel argued that it was in the child's best interest to terminate parental rights so that he could be adopted.

The juvenile court noted that the dependency proceedings had been pending for more than three years and stated:  "Mother does not meet any of the requirements of *Caden C.* and, I do find adoption is the plan.  [¶]  So the court is going to find by clear and convincing evidence this child is going to be adopted."  The court then terminated parental rights and found adoption to be the permanent plan.

Mother timely filed a notice of appeal.

## III.   DISCUSSION

Mother contends the juvenile court erred in terminating parental rights because it failed to undertake the analysis set forth in *Caden C.*, *supra*, 11 Cal.5th 614 to determine whether the parental benefit exception to the termination of parental rights in section 366.26, subdivision (c)(1)(B)(i) applied.  We disagree.

A.      *Beneficial Parental Relationship Exception*

"[T]he goal at the section 366.26 hearing is 'specifically . . . to select and implement a permanent plan for the child.' [Citations.]  To guide the court in selecting the most suitable

5

permanent arrangement, the statute lists plans in order of preference and provides a detailed procedure for choosing among them. [Citation.] According to that procedure, the court must first determine by clear and convincing evidence whether the child is likely to be adopted. [Citation.] If so, and if the court finds that there has been a previous determination that reunification services be terminated, then the court shall terminate parental rights to allow for adoption. [Citation.] But if the parent shows that termination would be detrimental to the child for at least one specifically enumerated reason, the court should decline to terminate parental rights and select another permanent plan. [Citation.]" (*Caden C., supra*, 11 Cal.5th at pp. 630–631.)

One such enumerated exception to the termination of parental rights is the beneficial parental relationship exception. (§ 366.26, subd. (c)(1)(B)(i).) In order to demonstrate that this exception applies, a parent must show: "(1) regular *visitation and contact*, and (2) a *relationship*, the continuation of which would *benefit* the child such that (3) the termination of parental rights would be *detrimental* to the child." (*Caden C., supra*, 11 Cal.5th at p. 631.)

B.    *Analysis*

Mother contends the juvenile court failed in its obligation to "make an express finding regarding the nature and quality of visitation" and an express finding that "adoption outweighed the benefits the child would retain by a continuation of a relationship with [m]other." By failing to argue below that the parental benefit exception to the termination of parental rights applied,

6

she has forfeited her challenge to the court's purported failure to make express findings under *Caden C., supra,* 11 Cal.5th 614. (See *In re Daisy D.* (2006) 144 Cal.App.4th 287, 292.)

Even if mother had not forfeited her argument on appeal, we would reject it on the merits. "[W]e are aware of no requirement . . . that the juvenile court, in finding the parental-benefit exception inapplicable, must recite specific findings relative to its conclusions regarding any or all of the three elements of the exception. To the contrary, we infer from section 366.26, subdivision (c)(1)(D)—under which the juvenile court is required to 'state its reasons in writing or on the record' when it makes a finding that termination of parental rights *would be* detrimental to the child—that the court is not required to make findings when it concludes that parental rights termination *would not be* detrimental. [Citations.]" (*In re A.L.* (2022) 73 Cal.App.5th 1131, 1156.)

None of the cases mother cites supports her contention that the juvenile court was required to make express findings. In each cited case, the juvenile court made a finding, prior to the Supreme Court's decision in *Caden C., supra*, 11 Cal.5th 614, that the parental benefit exception did not apply. The courts of appeal, acting after *Caden C.* was decided, reversed the juvenile court's orders, either because the record demonstrated that the court had based its ruling on improper factors under *Caden C.* (*In re D.M.* (2021) 71 Cal.App.5th 261, 264) or because the court could not assess whether the juvenile court had considered improper factors or how such factors impacted the ruling (*In re Dy.P.* (2022) 76 Cal.App.5th 153, 168–169; *In re J.D.* (2021) 70 Cal.App.5th 833, 854). Here, by contrast, not only do "[w]e presume the trial court followed applicable law" (*Cahill v. San

7

*Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956), but the court expressly stated that mother did not meet the requirements of *Caden C.*, *supra*, 11 Cal.5th 614.[4]

## IV.    DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

We concur:

BAKER, Acting P. J.

MOOR, J.

---

[4]    Having concluded the court did not err, we need not consider mother's argument that she was prejudiced by the purported error.