Filed 10/13/25  In re K.M. CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re K.M., a Person Coming Under the Juvenile Court Law. | H052866 (Santa Cruz County Super. Ct. No. 22JU00101) |
| SANTA CRUZ COUNTY HUMAN SERVICES DEPARTMENT, Plaintiff and Respondent, v. K.M., Defendant and Appellant. | |

Appellant K.M. (Mother) seeks review of the juvenile court's order terminating her parental rights as to minor child, K.M.  The sole issue on appeal is whether the juvenile court erred in finding the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) inapplicable.  Mother contends respondent Santa Cruz County Human Services Department (the Department) failed to comply with ICWA's inquiry and notice requirements.  We affirm the order.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

In June 2022, the Department initiated dependency proceedings pursuant to Welfare and Institutions Code section 300, subdivision (b),[2] alleging that Mother's and K.M.'s presumed father's, J.L., (Presumed Father) substance abuse problems put K.M. at risk. In the petition, the Department noted that its ICWA inquiry gave reason to believe K.M. is or may be an Indian child. The assigned social worker stated in the investigation narrative that Mother and Presumed Father denied having any Indian heritage. The social worker asked maternal grandmother whether she had any Indian ancestry. Maternal grandmother responded that maternal grandfather's side may have Indian heritage. She believed maternal great-grandmother on maternal grandfather's side may have Azteca Indian ancestry. Maternal grandmother said that she would try obtaining more information from maternal grandfather's side. Mother and maternal grandmother told the social worker they did not have maternal grandfather's contact information. Maternal grandmother contacted maternal grandfather via social media. Maternal grandfather responded to maternal grandmother's social media message stating he did not have any Indian heritage. She could not find the message. Maternal grandmother contacted maternal grandfather's sister. His sister did not respond to maternal grandmother.

The social worker tried contacting maternal grandfather twice but was unsuccessful. The Department conducted a relative search request of maternal grandfather. The social worker obtained his two sisters' and brother's contact information. First, the social worker spoke with one of the maternal grandfather's sisters. The social worker asked if she had maternal grandfather's contact information. She said

---

[1] " 'In accord with the usual rules on appeal, we state the facts in the manner most favorable to the dependency court's order.' [Citation.] In light of the limited scope of this appeal, we provide an abbreviated summary of the dependency proceedings." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1046 (*D.S.*).)

[2] Subsequent undesignated statutory references are to the Welfare and Institutions Code.

that she did not have a relationship with him and that he was hard to reach. Then, the social worker asked if she knew whether she had any Native American ancestry or Indian heritage. She responded that there might be on maternal great-grandfather's side. She told the social worker maternal great-grandfather's name. She said maternal great-grandfather passed away the prior year. She also stated that only he knew about possible Indian ancestry. She informed the social worker that she had an aunt who might have known, but the aunt also passed away. She said that the information about their ancestry was never passed on and did not believe maternal grandfather knew.

Next, the social worker contacted maternal grandfather's brother. Maternal grandfather's brother stated that he has not had contact with maternal grandfather in over a year. He also said that he did not have maternal grandfather's contact information and did not believe maternal grandfather had a phone. The social worker asked him if he knew whether he had any Native American ancestry or Indian heritage. He responded that they might on maternal great-grandfather's side. He was not "100% sure" and did not have any more information. He suggested the social worker contact his other sister.

Finally, the Department contacted the second sister. The social worker asked her if she knew whether she had any Native American ancestry or Indian heritage. She responded that she did not know and did not think they did. She said that only maternal great-grandfather knew, but he passed away. She also told the social worker that she did not have maternal grandfather's contact information and believed he broke his phone.

Prior to the initial hearing, Mother and Presumed Father filed parental notifications of Indian status denying any Indian ancestry. The court conducted its own ICWA inquiries of maternal great-grandmother, maternal grandmother, and maternal great-aunts who were present at the hearing. Based on the Department's reports and the ICWA inquiries conducted at the hearing,[3] the juvenile court found that there was no

---

[3] The record does not include a reporter's transcript for this hearing.

reason to know, but may be reason to believe that K.M. may be an Indian child. The court ordered the Department to continue its inquiry.

On the same day, the Department sent a letter to the Bureau of Indian Affairs (BIA). The Department wrote in its letter that there is a reason to believe that K.M. may be an Indian child but insufficient information to determine that there is reason to know that K.M. is an Indian child. The Department provided K.M.'s name and birthdate. The letter also stated Mother's name and her denial of Native American ancestry. The Department included maternal grandmother's name and her statement that maternal grandfather's side may have Native American affiliation. The letter also noted that maternal grandmother said she did not have maternal grandfather's contact information. The Department wrote that maternal grandmother contacted maternal grandfather on social media. The letter included that he reported not having any Indian heritage. The social worker noted maternal grandfather's name, birthdate, and possible current location. The letter stated that the social worker asked maternal grandfather's relatives about their Indian heritage. The Department noted they were unaware of any Native American affiliation. The letter included the relatives' names. The Department also wrote that maternal grandfather's relatives did not have maternal grandfather's current contact information. The Department stated that one relative said that any affiliation would be on maternal great-grandfather's side. The social worker included maternal great-grandfather's name and that he is deceased. The BIA responded that the Department failed to provide documentation showing that K.M. and K.M.'s parents "are members of a federally recognized Indian Tribe and/or the child is eligible for membership in a federally recognized Indian Tribe."

At the jurisdiction and disposition hearing, the juvenile court ordered family maintenance services for Mother and Presumed Father. Over a month after, the Department contacted maternal great-grandmother. Maternal great-grandmother reported that no one in the family was a tribal member.

4

Soon thereafter, the Department learned that A.O. was K.M.'s biological father (Biological Father). The Department conducted ICWA inquiries with Biological Father and paternal grandmother. They denied having any Indian ancestry. At the six-month review hearing, the juvenile court conducted its own ICWA inquiries of Biological Father, paternal grandmother, and paternal aunt who were present at the hearing. Based on the Department's report and the court's inquiries, the court found that K.M. was not an Indian child; there was no reason to know and no reason to believe K.M. was an Indian child; and ICWA did not apply as to Biological Father.

In their status review report, the social worker noted that Mother continued denying Indian ancestry. At the six-month family reunification services review hearing, the juvenile court questioned paternal grandmother about her Indian heritage. The court found that there was still no reason to know or believe that K.M. was a Native American child or that ICWA applied. The juvenile court terminated Mother's and Presumed Father's reunification services because they did not comply with the case plan. The court set the matter for a contested section 366.26 hearing. Mother filed a section 388 petition, requesting reunification services be restored. At the joint section 388 and section 366.26 hearing, the juvenile court took judicial notice of all prior findings and judgments. The court denied Mother's section 388 petition and terminated Mother's, Presumed Father's, and Biological Father's parental rights.

Mother timely appealed the order terminating parental rights.

## II. Discussion

Mother contends the juvenile court's ICWA findings should be reversed because the Department did not conduct adequate initial and continuing inquiries into K.M.'s Indian heritage. Mother also asserts that the Department provided defective notice to the

5

BIA.[4]  The Department argues that they conducted proper and adequate inquiry and that ICWA did not apply.

   A. *ICWA Compliance*

   Congress enacted ICWA to establish minimum standards for state courts to follow before removing Indian children from their families and placing them in adoptive homes. (*D.S.*, *supra*, 46 Cal.App.5th at p. 1048.)  In turn, California enacted and amended legislation to conform to federal regulation, which included establishing requirements in dependency proceedings involving Indian children.  (*Ibid.*)  An "Indian child" is defined under ICWA and California law as " 'any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]' "  (25 U.S.C. § 1903(4); § 224.1, subd. (b).)

   Under the relevant California provisions (§§ 224.2, subds. (a)-(e), 224.3), the juvenile court and county welfare departments have three distinct duties in dependency proceedings:  (1) a duty to inquire whether the child may be an Indian child; (2) a duty of further inquiry if that initial inquiry creates a "reason to believe" the child is an Indian child; and (3) a duty to provide formal notice if that further inquiry results in a "reason to know" the child is an Indian child.  (*D.S.*, *supra*, 46 Cal.App.5th at p. 1052.)

   There is a "reason to believe" the child may be an Indian child whenever "information suggest[s] that either the parent of the child or the child is a member or citizen, or may be eligible for membership . . . in an Indian tribe."  (§ 224.2, subd. (e)(1).)  If so, a duty of further inquiry arises.  (*Id.*, subd. (e).)  The duty of further inquiry requires the Department to interview parents and extended family members, contact the BIA and

---

[4] Mother requests that we take judicial notice of the federal BIA's guidance on "active efforts" to maintain or reunite an Indian child with his or her family.  The record does not establish that K.M. is an Indian child and nothing in the guidance addresses the sufficiency of the Department's inquiry.  Accordingly, we deny Mother's request as the document is irrelevant to the issues presented on appeal.

State Department of Social Services to identify names and contact information of the tribes in which the child may be a member or eligible for membership, and contact the tribe(s) and any other person that "may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (*Id.*, subd. (e)(2)(C); see also *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 999 (*Ezequiel G.*), disapproved on other grounds by *In re Dezi C.* (2024) 16 Cal.5th 1112, 1152, fn. 18 (*Dezi C.*).)

If further inquiry results in a "reason to know" the child is an Indian child, the third duty to provide formal notice to the pertinent tribes arises. (§§ 224.2, subds. (d) & (f), 224.3.) "There is 'reason to know' a child is an Indian child if any one of six statutory criteria is met—i.e., if the court is advised that the child 'is an Indian child,' the child's or parent's residence is on a reservation, the child is or has been a ward of a tribal court, or either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe. [Citation.]" (*Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 999; see also § 224.2, subd. (d); Cal. Rules of Court, rule 5.481(b).)

However, "[i]f the juvenile court finds that 'proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child,' the court may make a finding that ICWA does not apply to the proceedings, 'subject to reversal based on sufficiency of the evidence.' [Citation.]" (*Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 999; see also § 224.2, subd. (i)(2).)

### B. *Standard of Review*

"The juvenile court's factual finding that ICWA does not apply is 'subject to reversal based on sufficiency of the evidence.' [Citation.]" (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134.) But while "[s]ome courts apply a straightforward substantial evidence test" to review this conclusion, "other courts have used a hybrid standard, reviewing for substantial evidence whether there is reason to know a minor is an Indian child, and reviewing a finding of due diligence and proper inquiry for abuse of discretion." (*Ibid.*,

7

fn omitted)  Although the California Supreme Court did not resolve this split in authority, it acknowledged *Ezequiel G.*'s language that "the juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is a 'quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Dezi C.*. at p. 1156-1157.)  " ' "On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case.  However, the less developed the record, the more limited that discretion necessarily becomes." ' [Citations.]." (*Ibid.*)

### C. *No Error in the Juvenile Court's ICWA Findings*

Whether we adopt the hybrid approach articulated in *Ezequiel G.*, or the "straightforward substantial evidence test," we conclude that the juvenile court did not err in determining that ICWA does not apply to the minor here, as the Department's inquiry met the ICWA requirements and there is no reason to know that K.M. is an Indian child.

#### 1. *Adequate Inquiry*

Mother asserts that the Department erred in its initial duty of inquiry.  Further, she argues that the Department erred by not inquiring about maternal grandfather's, maternal great-grandfather's, and maternal grandfather's siblings' biographical information.  She also contends that the Department failed to investigate Mother's claimed heritage after the letter to the BIA.  Finally, Mother asserts that the Department provided defective notice to the BIA.[5]

First, we reject Mother's argument that the Department failed in its initial duty of inquiry.  The Department interviewed all "reasonably available" family members, including maternal grandmother, maternal great-grandmother, maternal great-aunts, and maternal great-uncle. (*Dezi C.*, *supra*, 16 Cal.5th at p. 1140.)  The social worker inquired about Biological Father's and paternal grandmother's Indian heritage.  The juvenile court

---

[5] Mother does not challenge the ICWA findings related to K.M.'s paternity.

8

conducted its own ICWA inquiries of the paternal relatives at the six-month review hearing.

Next, the Department's investigation into Mother's claimed heritage was adequate and proper. After learning that maternal grandfather may have Indian ancestry, the social worker unsuccessfully tried contacting maternal grandfather. The Department conducted a relative search request of maternal grandfather. The social worker interviewed maternal grandfather's siblings. They each stated that they may have Indian ancestry on maternal great-grandfather's side but were uncertain. They did not identify any federally recognized Indian tribe that the Department could contact. The Department and Mother's family members cannot ask maternal great-grandfather for information because he is deceased. One sister noted that her aunt might have known about whether they have any Indian ancestry. However, she is also deceased. The investigative trail ended with maternal grandfather's siblings. (See *In re J.S.* (2021) 62 Cal.App.5th 678, 689-690 (*J.S.*) [affirmed juvenile court's ICWA findings where the paternal grandmother stated she did not know of any tribe associated with her family, had no other information, and did not identify any other paternal relatives].) After the juvenile court ordered the Department to continue its inquiry, the Department sent a letter to the BIA. The BIA's letter stated the Department's documentation did not demonstrate that K.M. was an Indian child.

Mother contends that the Department did not inquire about maternal grandfather's, maternal great-grandfather's, and maternal grandfather's siblings' biographical information. "[The Department's] inquiry obligation is 'not an absolute duty to ascertain or refute Native American ancestry.' [Citation.]" (*In re D.F.* (2020) 55 Cal.App.5th 558, 570.) Maternal grandfather's siblings could not identify a tribe. Thus, the Department's failure to gather biographical information is not dispositive to the adequacy of the Department's inquiries. Even if the Department gathered the biographical data, without "the identity of a tribe, let alone a federally recognized one, or at least a specific

9

geographic area of possible ancestry origin, the [ ] (BIA) could not [be expected to assist] the Department in identifying the tribal agent for any relevant federally recognized tribes. [Citations.]" (*J.S.*, *supra*, 62 Cal.App.5th at p. 689.)  Further, maternal great-aunts and maternal great-uncles are not among the "[e]xtended family member[s]" that must be interviewed.  (See § 224.1, subd. (c) ["[e]xtended family member" is defined as provided in [s]ection 1903 of ICWA].)

We recognize that maternal grandmother asserted possible "Azteca Indian" ancestry through maternal great-grandmother on maternal grandfather's side.  However, federal recognition of an Indian tribe involves the establishment of government-to-government relations with a tribe indigenous to the lands occupied by the United States. (25 C.F.R. § 83.1.)  Aztec is not a federally recognized Indian tribe for ICWA purposes. (89 Fed.Reg. 944 et seq. (Jan. 8, 2024).)

Mother also argues that the Department erred by not investigating Mother's claimed heritage after the letter to the BIA.  However, neither Mother nor her family members identified additional family members that the Department could have interviewed.  "Where . . . a parent largely fails . . . to provide names and contact information for extended family members, [the Department]'s ability to conduct an exhaustive ICWA inquiry necessarily is constrained."  (*In re Q.M.* (2022) 79 Cal.App.5th 1068, 1082.)  "[W]e cannot ask the agency to intuit the names of unidentified family members or to interview individuals for whom no contact information has been provided."  (*Ibid.*)  The only identified family members that could have provided information were maternal great-grandfather and maternal great-grand-aunt.  Both are deceased.  Certainly, where family members with possible ties to an Indian tribe are deceased, we cannot ask the Department to intuit information that no known living family member possesses.

Finally, Mother asserts that the Department sent a defective notice to the BIA because it lacked the biographical information that Judicial Council form ICWA-030,

10

Notice of Child Custody Proceeding for Indian Child, requires.  However, form ICWA-030 relates to the third duty of "formal notice" when there is a "reason to know" the child is an Indian child.  (§§ 224.2, subd. (d), 224.3.)  Here, the criteria for "reason to know" was not met.  Mother also has not cited any evidence from the record to demonstrate otherwise.  The Department was not required to utilize form ICWA-030 to conduct its further inquiry.  The failure to include information listed in that form is not dispositive as to the adequacy of the Department's inquiries.

Based on this record, we perceive no abuse of discretion in the juvenile court's determination that the Department acted with due diligence and conducted an adequate inquiry.  Mother has not shown the juvenile court's findings to be arbitrary, capricious or whimsical.  (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 957.)  The Department extended as far as was feasible to investigate K.M.'s ancestry with the information provided by Mother and maternal family members.  The record establishes that the court read and reviewed the Department's reports, including the Department's ICWA inquiries.  The juvenile court also conducted ICWA inquiries.  The juvenile court appropriately exercised its discretion when it concluded that the inquiry regarding K.M.'s possible Indian ancestry was proper, adequate, and duly diligent.[6]

### 2. *Substantial Evidence Supports the Finding K.M. is not an Indian Child*

Our careful review of the record also demonstrates that substantial evidence supports the juvenile court's ultimate determination that there is no reason to know K.M. is an Indian child.  The maternal family could not identify their association with a federally recognized Indian tribe.  Mother and her family did not identify other family members who could have been interviewed to provide information regarding Indian ancestry, and certain family members are deceased.  The investigative leads provided by

---

[6] Our extensive summary of the record also demonstrates that the "straightforward substantial evidence test" applied by some of our colleagues in other appellate courts to the adequacy of the initial inquiry is satisfied here.  (See *In re H.B.* (2023) 92 Cal.App.5th 711, 721.)

11

maternal family members did not develop evidence that K.M. had Indian ancestry. The BIA confirmed that the documentation provided by the Department did not substantiate that K.M. was an Indian child.

The trial court did not err in finding that the Department's inquiry complied with ICWA requirements and that there is no reason to know K.M. is an Indian child.

### III. DISPOSITION

The order terminating Mother's parental rights is affirmed.

_____
Greenwood, P. J.


WE CONCUR:




_____
Grover, J.




_____
Lie, J.




H052866 In re K.M.; Santa Cruz County HSD v. K.M.